## AUSTIN vs. THE STATE.

1. It is in the power of the State Legislatures, unless restrained by some provision in their State Constitution, to prohibit or to restrict the exercise of any trade or business within such State.

2. No such prohibitory clause is contained in the Constitution of this State.

3. The sale of intoxicating liquors is by law illegal—is not a privilege of a citizen of this or any other State. The right to sell can only be acquired by complying with the law.

4. Citizens of other States are not by the Constitution of the United States entitled to the political and municipal rights and privileges of citizens of this State.

5. The County Court has the exclusive right to determine whether a license to keep a dram-shop or grocery shall be granted.

6. A license to keep a dram-shop granted by the city of St. Louis does not dispense with the necessity to procure a license from the County Court.

7. It is not necessary to allege in what character or capacity the defendant sold. It is sufficient to set out the sale without license.

## APPEAL from St. Louis Criminal Court.

LESLIE, *for Appellant.*

STRINGFELLOW, *Attorney General, for the State.*

NAPTON, J., *delivered the opinion of the Court.*

This was an indictment for selling spirituous liquors, in quantities less than one quart, without license. The indictment charged that the defendant, at, &c., on, &c., did unlawfully carry on the trade and business of a dram-shop keeper, and that he did then and there unlawfully sell intoxicating liquors in a quantity less than a quart, without having any license therefor, contrary, &c. The defendant appeared, and pleaded, 1st, that he had never resided in the State of Missouri for the space of two years before the finding of the indictment; 2nd, that he was a natural born citizen of the United States, and had never resided in this State for two years before the finding of this indictment; 3rd, that he is a natural born citizen, &c., and never resided in this State, &c., and that he

made application to the County Court of the county of St. Louis for a license to carry on the business of a dram-shop keeper, and had complied with all the requirements of the law in such case made, but that the said court refused to grant him said license; 4th, that he was duly and legally licensed to keep the dram-shop in the said indictment mentioned, by the City of St. Louis, by virtue of a certain ordinance recited in the plea.

The Circuit Attorney filed a demurrer to these pleas, which the Criminal Court sustained. The defendant was found guilty, and fined. The defendant moved in arrest of judgment, because of the deficiency of the indictment. This motion was overruled.

The first two pleas, we understand, are designed to call in question the constitutionality of an act passed by our Legislature, in 1843, (see Rev. Code of 1845, app. p. 1099) restricting the County Court of St. Louis county, in granting dram-shop licenses, to persons who have resided for two years in the State and three months in the county. We do not see very clearly how these pleas would furnish any defence to the indictment, if it were conceded that this law was unconstitutional, unless we further admit that the business of dram selling is an occupation which the Legislature either have no power to prohibit or have failed to place under any legal and constitutional restrictions. Passing by these questions, however, for the present, we have no hesitation in acknowledging our inability to see any conflict between the act of the Legislature alluded to and the constitution of the United States. The second section of the fourth article is the clause relied on as conflicting with the statute. That section declares, that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States. This provision was taken from the old articles of confederation and seems to have encountered no opposition or discussion in the convention where it was framed, or in those to whose deliberations the constitution was subsequently submitted. Nor has it given occasion to any of those judicial interpretations which so many other clauses in the same instrument, affecting the rights of the States or the power of the Federal Government, have from time to time elicited. In Abbott vs. Bayley, (6 Pick. R., 89) Chief Justice Parker incidentally alludes to this clause of the constitution, and seems to think it very manifest that it is to be understood in a qualified sense. It was merely designed to declare that the citizens of the different States should not be aliens to each other, but that they might take and hold real estate without the necessity of becoming naturalized, and eventually enjoy the full rights of citizenship, by complying with the laws of the State to which they may transfer their residence. It was not

intended to prevent the States from requiring such length of residence for the enjoyment of political or municipal rights as they might deem conducive to their welfare. The whole history of State legislation shows that the interpretation of this clause in the Federal Constitution, which has been contended for at the bar, does not embrace the sense in which it has been generally understood. There is scarcely a State, we apprehend, which has not thought proper to require some length of residence as requisite to the exercise of political and municipal rights by emigrants from the sister States. It is true, that in point of practice, few of the States have thought it advisable to place any restrictions upon the learned professions or upon any class of industrial pursuits. But it is equally true, that the State Legislatures have the power, unless there be something in their own constitutions to prohibit it, of entirely abolishing or placing under restrictions any trade or profession which they may think expedient. Can there be any doubt that the Legislature of Missouri might declare the practice of law or medicine an unlawful calling, if they thought fit so to do; or that the professors of these sciences should have certain qualifications, of age, length of residence, moral character, &c., which in their wisdom might seem proper? Of course we will not be understood as extending these remarks beyond the particular clause of the Federal Constitution of which we are now speaking. There may be other clauses in that instrument—and there certainly are provisions in all our State constitutions, which will not permit legislative bodies wantonly to interfere with or destroy many of the natural or conventional rights of the citizens. Of this class, are those provisions which secure the freedom of the press and of speech, and the freedom of debate. But we are not aware that there is any provision in our constitution which would prevent the Legislature from prohibiting dram selling entirely; nor have the Legislature been prevented from placing such restrictions upon this business as they may think fit. They have exercised this power, not of prohibiting, but of restricting it. They have virtually declared that selling spirituous liquors in quantities less than one quart is illegal, and subjects the seller to heavy penalties, unless he has taken the steps required by the law. To sell drams without a license, is not a privilege which either our citizens or strangers can enjoy in this State. The Legislature has probably regarded this business as one which should receive no encouragement, because of its tendency to deprave the public morals. Believing it most expedient to restrict, rather than to attempt its entire abolishment, they therefore made it a source of revenue. But the act concerning groceries and dram-shops is not a mere revenue law, any

more than the act concerning attornies and counsellors at law could now be regarded as a revenue law, since the act of 1846-'7 has made the practice of law a source of State revenue. The act concerning dram-shops prohibits the selling of drams without a license duly obtained, and requires certain qualifications in the persons to whom licenses may be granted. Whenever the Legislature prohibits any calling or profession, it ceases to be a lawful pursuit; and when the Legislature do not prohibit it, but allow it to be exercised by certain persons, having certain qualifications specified in the law, it then becomes a municipal privilege, which may be only exercised by those persons who have the qualifications, and pursue the steps required by the law. It would be strange indeed, that the moment a citizen of another State sets his foot on our soil, he is to be considered as entitled to all the political and municipal privileges enjoyed by our own citizens, without regard to the constitution and laws of this State. And yet the words of the Federal Constitution are without qualification. If we agree to exclude political privileges from the number of privileges and immunities which the constitution of the United States declares citizens of other States shall be entitled to, there is the same reason for extending the limitation to municipal privileges.— And selling spirituous liquors in quantities less than one quart, is in this State a *privilege* granted only to those having the qualifications pointed out in the act. A residence of two years in the State, is one of the qualifications which the Legislature have thought proper to require in the city of St. Louis; and this qualification, we consider, is no more liable to constitutional objections than a residence of one year before a citizen from another State is allowed to vote, or a residence of five years before he can be elected to the Legislature.

The third plea sets up as a defence that the County Court refused the defendant a license, notwithstanding he possessed every qualification required by the act. The plea also admits that the applicant had not been in the State for two years. Of course the plea is framed upon the hypothesis that the residence of two years in this State is an unconstitutional requisite, and this question having already been disposed of, the other grounds of defence insisted upon might be passed over without observation. But as the question arises in another case, we may as well dispose of it here. The act concerning groceries and dram-shops requires applications for licenses to be made to the County Court, and authorizes this tribunal, where it is of opinion that the applicant is a person of good character, to grant him a license. The court is to decide upon his qualifications. The Legislature have entrusted this court, and not any other

body, with the power of determining to whom licenses shall be granted. If the court improperly refuse to grant a license, this will not authorize the applicant to vend liquors without a license. If it were imperative upon the County Court to grant a license, whenever a suitable state of facts is made out, then the proper course to procure a license would be a *mandamus* from some other judicial tribunal having a superintending control over the County Court. It is certainly no excuse for the vendor of spirituous liquors without license, that the County Court have refused or failed to do their duty.

The fourth plea sets up a license from the city authorities. The ordinances of the city are subordinate to the laws of the State, and a license from the County Court is required by the laws of the State. The city license does not dispense with the necessity of a license from the State authorities.

The motion in arrest of judgment brings up the sufficiency of the indictment, which is the only question remaining.

The indictment is said to be defective, because it does not allege that the defendant sold the liquors in the character or capacity of a dram-shop keeper. It does not matter in what capacity the defendant sold, if the sales have been without license. If the want of a license generally is averred in the indictment, that is sufficient; and if the defendant claims any special exemptions, he may show them. When the cases of the State vs. Brown, the State vs. Schlick, &c., (8 Mo. R., 210) were determined, both the act concerning groceries and dram-shops and the act concerning inns and taverns were in force, and authorized a sale of liquors in quantities less than a quart under either license. There was undoubtedly great confusion growing out of such apparently inconsistent and contradictory provisions; but seeing that the act concerning groceries and dram-shops expressly and in terms recognized the existence of the other law, the court found it necessary to reconcile the provisions of the two laws, and this could only be done by considering a license under either law as authorizing the sale of liquors in small quantities. Those expressions in either law which by themselves would seem to have contemplated a license under one of them as alone sufficient to protect the vendor of spirituous liquors, were therefore necessarily to be understood in a limited and qualified sense. The law concerning inns and taverns was thought to be still in force when the revision of 1845 was published, as we find it still retained in that volume. Whatever propriety there may have been in so considering it, the act of the last session of the Legislature (Feb. 16, 1847) appears to sanction that idea, and it

would be useless now to examine the question. The case stands, then, as it did in 1835, and the cases of the State vs. Hans, &c., decided that the negation of a license generally was sufficient.

I take this occasion to disclaim the opinions imputed to this Court by the head notes to the above cited cases. There is not a word in the opinion which gives any color to the inference which seems to have been drawn from it, that *because* an indictment adopted the words of the statute creating the offence, it was *therefore* bad. No lawyer ever imagined that an indictment was vitiated by pursuing the language of the statute, nor am I aware that it has ever been held, by this or any other court, that *every* indictment is good *solely* because it uses the words of the act which describes the offence. Such a description by the pleader is in some cases sufficient, and never vitiates, but, in many instances, is far from making a good indictment. Where the offence, though described by the statute in general terms, requires the concurrence of some person other than the offender to render it complete, the name of such person must be given in the indictment; or, where the name is unknown, it must be so stated. The laws concerning ferries, clock pedlars, merchants, and others, whose occupations require a license, describes offences against their provisions in general terms, but it has been uniformly held that the indictments under them must specify some act or acts in violation of law, and that mere general charges in the words of the law will not suffice.

This disavowal of entertaining any such views as have been attributed to this Court by the head notes to those cases, is rendered necessary by the last objection which the plaintiff in error makes to the sufficiency of this indictment. That objection is, that the indictment does not allege any particular act of sale, nor to whom the sale was made. This objection is undoubtedly valid, if any regard be paid to precedent. The indictment should state the person or persons to whom drams have been sold; or, if the names of the persons be unknown to the grand jurors, it should be so stated. This has been the approved form of such indictments heretofore, and no authority or reason, of which we are apprised, warrants a departure from such form. It is not for us to say, that such allegations are useless; that they seldom impart to the defendant any information which he has not previously. The principle upon which such allegations have been originally introduced, is a sound one, and, in some offences of this class, might be of great importance to the defendant.— In this particular offence, we may be unable to see any particular benefit to be derived from it, but we have no authority for dispensing with it on that account.

The other Judges concurring, the judgment is reversed.