State *v.* Searcy.

THE STATE, Plaintiff in Error, *vs.* SEARCY, Defendant in Error.

1. The law prohibiting the sale of liquor (R. C. 1845,) without a license is constitutional.

*Error to Monroe Circuit Court.*

The case is stated in the opinion. Written arguments on behalf of the state were filed by Mr. Carr and Mr. Clover. There was no appearance for the defendant.

RYLAND, Judge, delivered the opinion of the court.

At the June term, 1854, of the Circuit Court within and for Monroe county, the grand jury indicted the defendant, Searcy, for selling intoxicating liquors in quantities less than one quart, without a license. This indictment was found upon a violation of the act of 1845, entitled "An act to regulate groceries and dram-shops," approved March 25, 1845.

The defendant appeared and moved the court to quash the indictment, assigning for reason, that the first and third sec-

tions of the said act were repugnant to the constitution of the state. This motion was sustained, and the defendant discharged. The State duly excepted to the decision of the court, and brings the case here by writ of error.

The only question before us is that involving the constitutionality of this statute. The first and third sections are as follows: Sec. 1. "No person shall directly or indirectly sell intoxicating liquors without taking out a license as a grocer or dram-shop keeper."

Sec. 3. "No grocer shall, directly or indirectly, sell intoxicating liquors in any quantity less than a· quart, nor shall he permit any intoxicating liquors sold by him to be drank at his grocery, or at any place under his control."

Sec. 4. " A dram-shop keeper is a person permitted by law, being licensed according to the provisions of this act, to sell intoxicating liquors in any quantity less than a quart." This last section has been repealed by an act passed in 1849, approved March 12, by which last act a dram-shop keeper is permitted to sell intoxicating liquors in any quantity less than ten gallons at any one time.

The nineteenth section of the act of 1845 fixes the penalty for a violation of the provisions of the act at not less than twenty nor more than one hundred dollars.

There is no provision of the constitution of the state of Missouri which denies to the legislature the power of enacting this statute. This statute is nothing more than an assertion in part of what is called or known familiarly as the police power of a state; a power to preserve the peace, promote good morals, restrain vice, and protect the property and health of the people. That the several state governments have exercised these and kindred powers to the very amplest extent, from the earliest period of their existence, is matter of history.

A similar statute in New York has been held not to conflict with the constitution of the United States. (See *Ingersoll* v. *Skinner et al.*, 1 Denio, 540.)

In the case of the *Commonwealth* v. *Kimball*, (24 Pick.

State *v.* Searcy.

359,) the Supreme Court of Massachusetts held that the statute requiring a person to be first licensed as a retailer of spirits, before he could presume to sell in a less quantity than twenty-eight gallons, was not repugnant to the constitution of the United States.   Chief Justice Shaw says, in delivering the opinion of the court in this case : " The power to pass laws for regulating licensed houses, as one of the powers of general police, is clearly vested in the state, and is as clearly not vested in the general government.   But in carrying into effect a law flowing from one of the acknowledged powers of a state, they may resort to means, which, in their operation, would oppose or impede a law of the United States, made in pursuance of its acknowledged powers.   In such case, the law of the state must yield, so far as it can have this effect.   But such conflict is not to be presumed, but, on the contrary, it must be clearly shown and established.   In the present case, it is not shown, nor can we presume that the law regulating the sale of spirituous liquors by retail, and confining the power to sell in that form to those who shall first have obtained the recommendation of the proper officers for that employment, will frustrate, defeat or impede any law of the United States."

The *State* v. *Muse*, (3 Dev. & Bat. 319 :)  A statute of North Carolina, prohibiting the sale of spirituous liquors and other articles, except by licensed stores and taverns, near a church or meeting house, or other place of divine worship, was, by the Supreme Court of that state, held to be constitutional.

License cases, 5 How. Sup. Ct. U. S. Rep. 504 : The liquor laws of Massachusetts, New Hampshire and Rhode Island declared constitutional.   The design of these laws was manifestly to prevent tippling and disorder by promoting temperance and sobriety ; obviously a part of the system of internal police of every well regulated government.

The Supreme Court of Alabama held that a power granted to the corporation of the city of Mobile "to license bakers and regulate the weight and price of bread, and prohibit the baking for sale," except by those licensed, is not contrary to the

constitution of the state. (See *Mayor and Aldermen of Mobile* v. *Yuille*, 3 Ala. 137.) The Supreme Court of Tennessee held that the legislature had the power, under their state constitution, to prohibit, in general, the keeping of stallions and jacks for purposes of profit in the propagation of stock ; and also to prohibit, in general, the exhibition of shows, and yet concede these privileges to all those who shall apply for a license and pay for the privilege the amount specified by law. (*Mabry et al.*, v. *Tarver*, 1 Humph. 94. 12 Conn. 7. 8 Ohio, 521. 3 Smedes & Marsh. 584. 7 How. Sup. Ct. U. S. Rep. 283, Passenger cases. R. M. Carlton's Rep. 26.) And it is believed, when such powers are denied to the legislative departments of the states, there will be but little left for which their continued existence is at all important.

Questions have sometimes arisen in the courts as to whether a state statute had not been so framed as to constitute a regulation of commerce, in the sense in which that subject has been placed under the control and power of congress ; or so as to impose a duty on imports or exports, contrary to the provisions of the constitution of the United States. In the case of *Crow* v. *State of Missouri*, (14 Mo. Rep. 237,) the question was made at the bar, and discussed by the judges, whether a tax on an occupation, graduated by the amount of property on hand, might not be considered as a tax on the property itself, and if so, whether it should not stand affected by the provision in our constitution which requires the taxation of property to be in proportion to the value.

No such question arises here, and whatever may have been the conflict of opinion that has sprung up in our judicial tribunals, when other subjects have been brought into the scope of the controversy, there seems to be no room to doubt that the statute now under consideration would be promptly upheld by the supreme courts of every state in the Union.

That such a statute is not unconstitutional, has been already adjudged, in the following cases decided by this court : *Austin* v. *The State*, 10 Mo. Rep. 591. *State* v. *Lemp*, 16 Mo.

Rep. 389. *City of Hannibal* v. *Guyott*, 18 Mo. Rep. 515. The Circuit Court therefore erred in sustaining the motion to quash the indictment. Its judgment is reversed and the cause remanded for further proceedings; the other judges concurring.