STATE OF MISSOURI, EX REL. J. GAZZALO, Relator, *v.* N. C. HUDSON, COLLECTOR, Respondent.

November 28, 1882.

1. PLEADING. — A general averment of compliance with the requirements of a statute states a conclusion, and is bad pleading.

2. —— A petition must state facts constituting a compliance with the requirements of a statute where a plea of compliance is necessary.

3. MANDAMUS — DRAM-SHOPS — LICENSES. — In *mandamus* to compel the issuance of a dram-shop license, the petition and the alternative writ must show a compliance with the municipal ordinances and with the statute.

4. DRAM-SHOPS. — The right to keep a dram-shop is not a legal right, but is a municipal privilege.

5. —— COUNTY COURTS. — The granting or withholding of this privilege is within the discretion of the county courts.

6. —— MANDAMUS. — The county courts' discretion in refusing to grant a dram-shop license cannot be controlled by *mandamus.*

7. —— CITY COLLECTOR. — The functions of the city collector of St. Louis with reference to issuing dram-shop licenses are the same as those of county courts.

8. ——LICENSES.—An applicant for a dram-shop license in St. Louis, must present a petition signed by a majority of the tax-paying citizens of the block,

APPLICATION for *mandamus.*
*Motion to quash sustained.*

Brown & Hamm, for the relator.

George W. Bailey, for the respondent.

Thompson, J., delivered the opinion of the court.

This is a proceeding by *mandamus*, the object of which is to compel the respondent, who is collector of the city of St. Louis, to issue a dram-shop license to the relator. The questions we now have to consider are raised by a motion to quash the alternative writ.

1. The first ground of this motion is that the writ does not state facts sufficient to entitle the relator to the relief which he seeks. The writ states generally that the relator has complied with all the provisions of the statutes of the state, and of the Revised Ordinances of the city, relating to the issuing of dram-shop licenses. It is obvious that this general allegation is not sufficient, without more, to entitle the relator to the peremptory writ. It is too general in its terms, and falls within the rule of pleading, which makes any pleading bad which does not state the facts which entitle the party to the relief sought, but which states merely conclusions of law. "In the alternative *mandamus* and the petition, the relator should set forth the facts upon which he relies for the relief sought. The defendants should have the facts before them, so that they could either admit or deny them, or take issues on the facts stated, constituting the plaintiff's right to the relief required." *The State ex. rel.* v. *Everett*, 52 Mo. 89. We must, therefore, look beyond these general allegations to see whether the petition otherwise states the facts which are necessary to entitle the petitioner to this relief. It states that the application of the petitioner to the collector for the license which he seeks "was accompanied by a petition signed by a majority of the *bona fide* householders, being the owners, lessees, and tenants of property in the block where it is proposed to locate said dram-shop, as set forth and required by Article II, chapter 37, of the Revised Ordinances of said city, and also

as required by and under the statute relating to dram-shop license, in chapter 98 of the Revised Statutes of the state of Missouri."

We do not take judicial notice of the Revised Ordinances of the city of St. Louis, but we may here assume what is stated in this writ, that they contain a provision empowering the collector to grant dram-shop licenses where the petition for the same is signed by a majority of the *bona fide* householders in the block in which the dram-shop is to be located and kept. But the ordinances of the city relating to this subject are subordinate to the laws of the state, by which the same subject is regulated; and it is not sufficient, to entitle the applicant to a license, for him to show merely that he has complied with the requirements of the ordinances of the city. He must also show that he has complied with the requirements of the laws of the state. *Austin* v. *The State*, 10 Mo. 591, 595.

The law of the state regulating the issuing of dram-shop licenses (Rev. Stats., sect. 5442) prohibits the granting of " any license to keep a dram-shop, in any city, or block or square in such city, incorporated town, or municipal township, until a majority of the tax-paying citizens therein shall sign a petition asking for such license to keep a dram-shop therein."

It is perceived that it is quite possible to comply with the municipal ordinance, the provisions of which are recited in this writ, by procuring the signatures to a petition for a dram-shop license, of a majority of the *bona fide* householders, without its being signed by "a majority of the tax-paying citizens residing in the block." For instance, there might be a large hotel in a particular block, in which many tax-paying citizens might reside with their families. They might have an interest in preventing the establishing of a dram-shop in the block; and yet, we apprehend, they would not be regarded as householders within the meaning of the municipal ordinance, though their signatures to such a petition would clearly be necessary, under the law of the state.

As the alternative writ does not show a compliance with the law of the state in this particular, it is clearly defective, and it must for this reason be quashed.

2. But as this defect might possibly be cured by an amendment, or by a renewal of the application, we shall proceed to consider the more substantial question, whether this is a case in which the writ of *mandamus* can be awarded at all. And here we need do no more than state in general terms certain familiar rules with reference to the nature and uses of this writ. It lies only to compel the performance of a duty clearly enjoined by law. It lies only at the suit of a person who shows a clear right to the relief which he thus seeks to enforce. It does not lie where any other legal remedy is open to the relator. It does not lie against a public officer to command him how to act, unless the act sought to be compelled is ministerial in its nature, so that the law itself enjoins how the act should be done. If the act involves the exercise of a discretion, judicial in its nature, which the law has committed to the officer, this writ cannot be used for the purpose of controlling that discretion, or directing the manner in which it shall be exercised. Applying these principles to the case at bar, it follows that this writ cannot be issued in any event, unless it is the law in this state, that a person of good moral character who complies with the provisions of chapter 98 of the Revised Statutes, and also with the provisions of the Revised Ordinances of the city relating to the issuing of dram-shop licenses, is entitled to such license as a matter of right; and, as a corrollary of this proposition, unless when he has so complied with the Revised Statutes and Ordinances, the collector has no discretion to refuse the license.

In determining the first of these questions, we are guided by two controlling decisions of the supreme court. *Austin* v. *The State*, 10 Mo. 591 ; *The State ex rel.* v. *Holt County Court*, 39 Mo. 521. These decisions clearly hold that the right to keep a dram-shop in this state is not a legal right,

but a municipal privilege; that the general rule is that the keeping of dramshops is unlawful — prohibited by the legislature on grounds connected with public morals and the public welfare; and that an exception to this rule is that the county court in any county may conter upon any person of good moral character this privilege, upon his complying with certain conditions prescribed by the legislature. The county court may do this, and they may not do it. The doing of it is the conferring of a privilege, not the granting of a right. It is within the sound discretion of the county court, where the statute has been complied with by the applicant, to confer or to withhold this privilege; and this discretion cannot be revised or controlled by any court having superintending jurisdiction over the county court, by writ of *mandamus.*

In the latter of the two cases just cited, the only question was, whether a person admitted to be of good moral character within the meaning of section 4 of chapter 98 of the General Statutes of 1865, who had complied fully with all the conditions and requirements imposed by the statute upon applicants for license to keep dram-shops, was entitled as matter of right to the license. The supreme court held that he was not, and refused a *mandamus* to compel the county court to issue a license to him. In so holding, the court used the following language: "The relator being admitted to be a person of good character within the meaning of section 4, chapter 98 of General Statutes of Missouri, 1865, can the county court of Holt County lawfully refuse to issue a dram-shop license to him after a full compliance upon his part with all the conditions and requirements imposed by the statute? This section, after stating how the application shall be made, and what statements it shall contain, concludes as follows: 'And if the court shall be of opinion that the applicant is a person of good character, the court may grant a license for six months.' It is very earnestly insisted upon the part of the counsel for the petitioner

that the words ' may grant,' as here used, are not permissive merely, but they ought to be judicially construed to be imperative. In other words, that whenever it could be shown that the applicant has complied with all the requirements of the statute, the county court has no discretionary power in the premises, and the license must be granted as a matter of right. Quite a list of authorities, touching the proper construction of the word ' may,' as used in statutory enactments, has been presented in the petitioner's brief, all of which have been carefully examined. These authorities are uniformly to the effect that the word is only to be construed as mandatory for the purpose of sustaining or enforcing a right, but never to create one. It cannot be said in this case that the petitioner has a legal right which he is seeking to enforce by this proceeding. The case of *Austin* v. *The State* (10 Mo. 591) is we think, directly in point here. It was there held that, ' whenever the legislature prohibits any calling or profession, it ceases to be a lawful pursuit ;' and when the legislature do not prohibit it, but allow it to be exercised by certain persons, having certain qualifications specified in the law, it then becomes a ' municipal privilege.' It cannot be said with propriety, as we think, that it is the policy of our laws to regard the business of dram-selling in any other light than as a mere privilege, granted under restrictions and conditions that clearly imply a tendency to affect injuriously the public morals, and therefore not to be encouraged either by the laws themselves or the courts of the country. The business, then, which the relator seeks to engage in is not a matter of personal right, nor one that the interests of the public at large demand that he should be permitted to carry on. It is contended further, that a construction of this statute which places the whole matter within the discretionary power of the county court, would confer upon that tribunal an authority which might be exercised so as to lessen

materially the revenue of the state. Of course, this is based upon the idea that this act in relation to dram-shops is intended as a revenue measure rather than one to restrain and control, as far as possible, by legal restrictions, an evil which it was not considered wise or expedient to attempt to prohibit altogether. It is not necessarily to be treated by the legislature as a legitimate source of revenue to the state, but only becomes so incidentally; and the county court being, as we think, fully invested with discretionary powers in cases of this sort, may exercise the same, subject to the limitations and restrictions absolutely imposed by statute." *The State ex rel.* v. *Holt County Court*, 39 Mo. 525. We are bound by the authority of this case, and we therefore decline to look into the decisions of other states to which our attention has been called by the learned counsel for the relator.

3. The decision last cited is decisive of the question before us, and against the relator, unless the functions of the city collector of St. Louis, with reference to the issuing of dram-shop licenses, are different from those of the ordinary county courts throughout the state. The chapter of the Revised Statutes relating to revenue contains the following provision: "The council of St. Louis shall, in all things appertaining to the assessing and collecting of the state revenue and licenses in the limits of said city, perform and do all things which heretofore devolved on the county court of St. Louis County, not otherwise provided in the scheme and charter of said city. Whenever the county of St. Louis or the county court of St. Louis County is mentioned specially in this chapter, it shall be taken and understood as applying to the city of St. Louis." Rev. Stats. sect. 6874.

It will be seen that this provision does not purport to abrogate any provision of the scheme and charter relating to this subject, nor has the legislature power to do this. We must therefore look to the latter instrument to see what

provision has been made, if any, with reference to the office and duty of the issuing of licenses, which formerly devolved upon the county court of St. Louis County. Section 34 of the " Scheme for the separation and reorganization of the governments of the city and county of St. Louis " is as follows: " The municipal assembly shall have power to enact all ordinances that may be necessary to carry into execution the laws relating to state, county, city, and other revenue within the city of St. Louis, as enlarged; and such powers as are now vested by law in the county court of St. Louis County, or the clerk of said court, or the county collector and auditor, may be exercised by such tribunals and officers as may be provided by ordinance."

From this provision it would seem that it is within the power of the council of the city of St. Louis to designate by ordinance the officer who is to exercise the powers which were exercised by the county court of St. Louis County prior to the separation of the city from the county, relating to the issuing of dram-shop licenses. The charter of the city, of which we take judicial notice (sect. 24), provides that "the collector shall collect all city, state, and school taxes, licenses," etc. But this, it is perceived, refers not to the granting of licenses, but merely to the collection of the revenue accruing from the tax upon licenses. The function here prescribed is not different from that of collectors in the various counties in the state, who collect the tax imposed by law upon licenses which the county court have granted. As already stated, we do not take judicial notice of the ordinances of the city, and we do not know from the recitals in this alternative writ the terms of the ordinance, if there be one, under which the city collector succeeds to the powers and duties of the former county court. So far as the scheme confers upon the city council any power in this particular, it is obvious that the power can extend no further than the mere designation of the officer of the city

who is to succeed to the duties of the county court in this regard. This must necessarily be so ; for the scheme could obviously confer no power upon the city council to prescribe the duties of an officer of the city in respect of the execution of the laws of the state. That would be to concede to the council of the city of St. Louis the power, by ordinance, to alter the laws of the state within the limits of the city, which power, we apprehend, does not exist. So far then as the collector in issuing dram-shop licenses executes the law of the state, we take it that the nature of his functions is the same as those of the late county court. So far as their functions were judicial, his functions are judicial; and if they, in the exercise of a sound discretion, had power to refuse the granting of such licenses, notwithstanding the applicant for the same was of good moral character, and had complied with all the provisions of the law, he may refuse the license to such an applicant, and under like circumstances ; and we can no more control by our own writ of *mandamus* the exercise of a discretion which has been vested in him by the law for the public good, than we could control the county court of St. Louis or St. Charles County in the exercise of the same discretion.

But if upon the face of this writ we are not at liberty to infer that the city collector does exercise in this respect the power of the former county court, then we are driven to a conclusion which is equally fatal to this relator ; since, in that view of the writ, it is fatally defective in not pleading the ordinance under which, as already shown, the collector must derive whatever power he possesses in regard to the issuing of dram-shop licenses from the state law.

The judgment of the court is that the alternative writ of *mandamus* be quashed and the petition dismissed. All the judges concur.