The State ex rel. Campbell v. Heege.

STATE OF MISSOURI, at the relation of WILLIAM CAMPBELL *et al.* v. THEODORE HEEGE, Presiding Judge, AND PHILIP DEUSER AND T. F. ACKERMAN, Associate Judges of the County Court of St. Louis County.

**St. Louis Court of Appeals, July 6, 1889.**

1. **Action, Tax payers' right of.** After refusal by the attorney general of the state and of the prosecuting attorney of the county to act, a writ of *certiorari* may be granted upon application of assessed tax-paying citizens of the township to revise the illegal action of the county court in granting a license to keep a dramshop in such township.

2. **Downing Law, Action of County Court Under.** The county court in issuing such dramshop license acts judicially and not ministerially.

3. ———. An application in writing for a license, signed by tax payers and verified by the applicant and stating the place where the dramshop is to be kept, although not in form the petition of the applicant, is a substantial compliance with the requirement of Revised Statutes, section 5438, as amended by the Downing law (act of March 24, 1883).

4. **Downing Law, Jurisdiction of County Courts Under.** The jurisdiction of the county court in granting a license must appear on the face of its proceedings.

5. ———. It is therefore essential that the petition should show that it is signed by the requisite majority of *assessed* tax-paying *citizens;* a petition which merely purports to be signed by a majority of tax payers of the township is insufficient.

The State ex rel. Campbell v. Heege.

6. ———. The requirement, that the petition should be laid before the county court at the first term after the filing of it in the office of the clerk, is mandatory.

7. ———. The county court may amend, revise or revoke its order granting a license during the term in which the order was made.

*James P. Dawson* and *Zack. J. Mitchell,* for the relators.

The statute (Session Acts, 1883, sec. 4. p. 87) provides that the petition therein required shall be filed in the office of the clerk of the county court, and by said clerk laid before the court at the first term thereafter. The same section provides that "all dramshop licenses issued contrary to the provisions of this section shall be void." The county court construed this statute to permit the granting of a license at the same term and on the same day the petition was filed. The question thus determined by them was. a judicial question. *State ex rel. v. Burckhartt,* 87 Mo. 537. This construction by the county court was clearly erroneous, and its action was void. The affidavit of the applicant for license was no competent evidence of the sufficiency of the petition. The statute necessarily imposes upon the court the duty of investigating and determining by competent proof whether the petition presented complies with its requirements. And if it undertakes to determine this question arbitrarily and without any competent evidence its action is illegal, and will be reversed on *certiorari. People v. Board of Police,* 72 N. Y. 415, 445; s. c., 39 N. Y. 506; *People v. Smith,* 45 N. Y. 777; *People v. Weygant,* 14 Hun. 546; *Williams v. People,* 24 N. Y. 399; *Berry v. Lowe,* 10 Mich. 9; *Hyde v. Nelson, 1 b.* 357; *State v. Police Comms.,* 14 Mo. App. 308.

*John R. Warfield,* for the respondents.

THOMPSON, J., delivered the opinion of the court.

This is a *certiorari* sued out in this court to remove to this court the record of the county court of St. Louis county in relation to the granting of a dramshop license to Henry Horch.

The respondents under the seal of their court have made a return of the record and proceedings in the matter referred to, as fully as it remains among the records, papers and files of their court. They further return that it is a fact, as stated in the relator's petition, that a petition was presented to the respondents as such county court justices by the said Henry Horch on or about the —— day of June, 1889—purporting to be signed by a large number of the assessed tax-paying citizens of Central township, asking for the granting of a license to keep a dramshop in the town of Webster Groves in said township; "but as to whether the said petition was first filed with the clerk of said county court on the same or on a different day, or at the same or on a prior term from that on which the same was presented to or acted upon by the respondents as aforesaid, respondents have no knowledge other than as may be disclosed by the files and records of their said court. The respondents deny that they acted upon the said petition upon the affidavit of the said Horch alone, or without examination or knowledge of the character or sufficiency of said petition, as alleged, and aver the fact to be that they acted upon the said petition only upon due examination and investigation, and after, as they thought, being fully advised in reference to the same; and that, being of the opinion that said petition was in proper form, and that it contained the names of a majority of the assessed tax-paying citizens of the township, they then, and not till then, granted said petition, and ordered that said license issue upon the said Horch complying with the further requirements of the law.

The respondents have transmitted to this court the

original of the petition on which the dramshop license was granted. This petition is drawn on a number of printed blanks with the same heading. The caption and and prayer of the petition are as follows: "*Petition for Dramshop License.* To the Hon. County Court of St. Louis County: The undersigned, tax payers of Central township, St. Louis county, petition the court to grant Henry Horch a license to keep a dramshop at Webster Groves in said township for twelve months." To this petition six hundred and sixty names are signed, mostly in pencil, many of which are illegible, and many of which appear to be in the same handwriting.

On the back of this petition is an affidavit of the applicant for the license, which appears to have been made by filling up a blank form, and which is as follows:

"State of Missouri,

County of St. Louis.

"Henry Horch, being duly sworn, on his oath says that the foregoing petitioners comprise a majority of the tax payers of ——— in Central township of St. Louis county.

"( Signed ),   HENRY HORCH. "

"Sworn to and subscribed before me this third day of June, 1889.

"( Signed ),   W. C. WENGLER,
"County Clerk. "

On the back of this petition is the following endorsement: " June 3, 1889. Ordered license to be granted on compliance with the law. "

"THEO. HEEGE,
" Pres. Justice. "

The respondents have also returned to this court a certified copy of the order of their record granting said dramshop license. It is as follows:

" State of Missouri,  } ss.        May Term, 1889.
" County of St. Louis. }

" In the county court of said county, on the third day of June, 1889, the following among other proceedings were had, viz.:

" Now come tax payers of Central township and petition the court to grant Henry Horch a license to keep a dramshop at his stand in Webster Groves for six months from the third day of June, 1889. Ordered that the license be granted upon compliance with the law. Ordered that the dramshop bond of Henry Horch, in the sum of two thousand dollars, be and the same is hereby approved.

" And thereafter, on Monday the tenth day of June, 1889, the following further proceedings in said matter were had, to-wit: Minutes of last meeting read and approved, except that portion in relation to Henry Horch's dramshop petition, and it is ordered that the approval of said petition be continued until Monday June 17, 1889, for further hearing.

" And thereafter, on Monday, the seventeenth day of June, 1889, the following further proceedings were had in said matter : In the matter of Henry Horch's dramshop petition,—it now appears to the court that, on the third day of June, 1889, a dramshop license was issued and granted to him by order of the court, and the same is therefore approved."

The bond, with the approval of the presiding justice endorsed thereon, is also returned to this court with the other papers.

On the seventeenth day of June, 1889, a large number of " assessed tax-paying citizens " of Central township filed a remonstrance against the proceeding which had been taken by the county court in issuing the said dramshop license. This remonstrance was predicated upon the following grounds :

"1. The court, as we are informed and believe, was without authority in law to consider said petition, as filed on the third day of June, 1889, and is still without authority to affirmatively consider such petition.

"2. That said petition is not in law such as the court can lawfully affirm, in that it does not contain a majority of the assessed tax-paying citizens of said Central township, and, if granted, would be null and void.

"3. That the confidence of the court has been imposed upon by said petitioners falsely representing such petition as containing a majority of the assessed tax-paying citizens of said Central township: whereas it does not contain such majority, and the court has been thereby induced to consider the granting thereof, which, if effected, would be contrary to law, and subject the judges thereof to the penalties under the law incident to their so doing.

"4. That the granting of said petition would be without authority in law, and detrimental to the lawful rights and best interests of the citizens of said township. Touching the truth of all of which the undersigned pray to be heard and so inform the court."

Accompanying this remonstrance was an exhibit which contained a list of two hundred and twenty-seven names of "non-assessed tax payers therein on said petition, and duplicated names, as appears from assessor's books for the year 1889." This exhibit contained two hundred and fifteen names which the remonstrance asserted did not appear upon the assessor's books of the county for the year 1889, as tax payers, though they did appear upon the petition for the dramshop license in question. It also contained twelve names which the remonstrance asserted had been duplicated upon the petition for the dramshop license. This exhibit was supported by the following affidavit:

"We, the undersigned, make oath and say that we have since examined the names contained in the petition

aforesaid, with the last said county assessor's book for the said Central township, to-wit, the year 1888, and find that said petition contains the names heretofore attached, aggregating the number of two hundred and fifteen names, who do not appear as assessed tax payers of said Central township, and, also, the names of twelve assessed tax payers therein as duplicated on said petition, as per exhibit "A." herewith filed. And further find thereon the further names to the number of fifty-three by us illegible. And do further find from a personal examination of said assessor's book for Central township, being the latest assessment of said township, that there are in said Central township a total of twenty-five hundred and seventy-three assessed tax payers, real and personal, of whom there are fourteen hundred and fifty-three personal property assessed tax payers (citizens); and that the number of assessed personal tax payers on said petition, as taken from said assessor's book, are four hundred and thirty-three, out of the whole number of petitioners thereon, to-wit, six hundred and sixty petitioners."

This affidavit, apparently drawn with the intention of being sworn to by several persons, was sworn to by G. A. Moody alone.

This application was argued at the bar on the day before the final adjournment of the term by counsel for the relators, by the prosecuting attorney for the county court justice, and by counsel for Mr. Horch, the licensee. We have only time to indicate briefly the conclusions at which we have arrived :—

I. The first question is whether a proceeding of this kind can be prosecuted in this court at the relation of the assessed tax-paying citizens, or whether it is not essential that it should be prosecuted at the relation of the attorney general of the state or of the prosecuting attorney for St. Louis county. The petitioners came into court and asked special leave of court to institute this proceeding in the name of private assessed tax-paying citizens of the township. They stated in their

The State ex rel. Campbell v. Heege. .

petition that they have applied to the attorney. general
of the state, and to the prosecuting attorney of said St.
Louis county, for permission to make this application at
their relation, respectively, but that, in both instances,
permission has been refused. This statement has not
been controverted, and the prosecuting attorney of St.
Louis county has assented to the truth of it so far as he
is concerned. We understand that the reason why the
attorney general refused the use of his name was that
he regarded it as a local affair which should be prose-
cuted in the name of the prosecuting attorney; and that
the reason why the prosecuting atttorney in like manner
declined the use of his name was that there is a
statute requiring him to appear in such cases for the
county court,—which rendered it inconsistent with his
views of duty to act at once as the prosecuting officer
and as counsel for the respondents. We incline to think
that his views of duty were correct, and, in consequence
of the refusal of the attorney general and prosecuting
attorney of the county to institute the proceeding, we
also think that, to prevent a possible failure of justice,
it was within our discretion to grant the writ upon the
application of assessed tax-paying citizens of the town-
ship. Our statutes relating to dramshop licenses recog-
nize the principle that the granting of a dramshop
license is of inteiest to the assessed tax-paying citizens
of the cities, towns or municipal townships, by making
it a condition precedent to the granting of such license
that the applicant shall support his application by the
petition of at least a majority of the tax-paying citizens
of the city, incorporated town or municipal township
containing twenty-five hundred inhabitants or more;
and we think we merely carry out the policy of this
statute in recognizing the right of citizens of the munici-
pality or township remonstrating against the issuing of
the license to remove the record of the county court to
a superintending court for the purpose of having the
question determined whether it has been granted in a
case within the jurisdiction of the county court.

II.  ·The next inquiry is whether the act of issuing this dramshop license was a judicial or a ministerial proceeding.   It is conceded that the common-law writ of *certiorari* lies only to superintend the action of inferior tribunals when they act judicially, and that it does not extend to a superintendence of their acts when they act ministerially.   We are of opinion that in this case the county court acted judicially.   By the terms of the statute ( Laws of 1883, p. 87, sec. 4 ) they *may* grant the license, if the petition is signed by a majority of the assessed tax-paying citizens of the municipal township ; and by the terms of section 1 they *shall* grant it, if the petition is signed by *two-thirds* of the assessed tax-paying citizens of the municipal township.   Within these limits they have the discretion of granting or refusing it.   That this discretion is *judicial* in its nature is shown by the decision of this court under the former statute in *State ex rel. v. Hudson*, 13 Mo. App. 61, and decisions of the supreme court there cited, holding that "it is within the sound discretion of the county court, where the statute has been complied with by the applicant, to confer or to withhold this privilege," and that "this discretion cannot be revised or controlled by any court having superintending jurisdiction over the county court, by writ of *mandamus*."   This shows beyond all question that the act is a judicial act ; for, if it were a mere ministerial act, performance of it could be compelled by *mandamus*.

III.   The next question is whether there has been any application in writing to the county court within the meaning of section 5438 of the Revised Statutes, as amended by the act of March 24, 1883, known as the Downing law.   Laws of 1883, p. 86, sec. 1.   By this section it is provided : "Applications for a license as a dramshop keeper shall be made in writing to the county court, and shall state, specifically, where the dramshop is to be kept ; and if the court shall be of opinion that the applicant is a person of good character, the court

may grant a license for six months," etc. It is argued
on behalf of the relators that there has been no applica-
tion in this case, since the petition of the tax-paying
citizens, upon which the license was granted, should not
be regarded as an application for a license as a dram-
shop keeper within the meaning of the statute. We
are inclined to think that this position is too refined.
There is here a "petition for dramshop license." It is
in writing. It states the place where the dramshop is
to be kept at Webster Groves in Central township.
Although it is not in form the petition of the applicant
for the license, yet it appears to be upon a printed form
which has been adopted for such applications, and his
affidavit is endorsed upon it to the effect that the peti-
tioners contained in it comprise a majority of the tax
payers of the township. We think we should take too
strained a view to hold that this may not be regarded as
an application within the meaning of the section of the
statute above quoted.

IV. But the next point is fatal to the application.
The application is made by *"tax payers* of Central
township in St. Louis county." The statute recites:
"It shall not be lawful for any county court in this
state, or clerk thereof in vacation, to grant any license
to keep a dramshop in any town or city containing
two thousand, five hundred inhabitants or more, until a
majority of the *assessed tax-paying citizens* in the
block or square in which the dramshop is to be kept,
shall sign a petition asking for such license to keep a
dramshop in such block or square in such town or city;
nor in any city containing less than two thousand, five
hundred inhabitants, nor in any incorporated town or
municipal township, until a majority, both of the
*assessed tax-paying citizens* therein, and in the block
or square in which the dramshop is to be kept, shall
sign a petition asking for such license to keep a dram-
shop therein, which said petition shall be filed in the
office of the clerk of the county court, and by said clerk

laid before the court at the first term thereafter, and be renewed on the fourth day of July, every year thereafter.'' Revised Statutes, 1879, section 5442, as amended by the act of March 24, 1883, section 4 ( Laws of 1883, p. 87 ). It is perceived that the petition does not comply with the statute in that it recites that the petitioners are '' tax payers of Central township,'' instead of reciting that they are '' assessed tax-paying citizens of Central township.'' It is also perceived that the affidavit of the applicant for the license endorsed thereon merely states that ''the foregoing petitioners comprise a majority of the tax payers in Central township,'' etc. So far as appears from the petition the petitioners may be tax payers of Central township without being citizens. P it this does not comply with the law. They must be citizens as well as tax payers. Beyond this, they are recited in the petition merely as ''tax payers,'' whereas the statute requires that the petitioners shall be ''assessed tax payers.'' It is not enough that the petitioners are tax payers, for persons may be so regarded who are liable to be assessed for taxes, that is, who have taxable property within the township. They must be '' *assessed* tax payers,''—that is to say, they must have been actually assessed for taxes. Point is given to this conclusion by the seeming fact, developed by the affidavit in support of the remonstrance, that two hundred names of the alleged tax payers upon this petition did not appear upon the assessor's books as tax payers of the township for the last preceding year.

It is a familiar principle, touching the jurisdiction of inferior tribunals which do not act according to the course of the common law, that their jurisdiction must appear on the face of their proceeding, otherwise it will be held that they have acted without jurisdiction. *State ex rel. v. Police Commissioners*, 14 Mo. App. 297, 310, and cases there cited. It is a principle constantly acted upon, in superintending these inferior tribunals,

that where the statute predicates the right of affirmative action upon a petition by persons possessing a certain qualification, they have no jurisdiction to act, unless a petition is presented to them signed by persons possessing that qualification. Such is the case here. The statute requires that the petitioners shall be: (1) Citizens. (2) Assessed tax payers. But this petition neither purports to be the petition of citizens, nor that of assessed tax payers. The presentation of it to the county court, therefore, gave the court no jurisdiction to issue the license in question, and its order issuing the license is therefore void.

V. We might stop here, but another interesting and important question is presented by the record. Section 4 of the act of 1883, as above quoted, recites that "said petition shall be filed in the office of the clerk of the county court, and by said clerk *laid before the court at the first term thereafter*." In this case it does not appear to a certainty on what day this petition was filed with the clerk of the county court, or that it was ever filed with such clerk. It contains no file mark by the clerk, which is the usual evidence of the date of a paper being filed with the clerk; though the remonstrance of June 17, and the exhibit filed with it, do contain the clerk's file mark. Neither does the record of the county court, granting the dramshop license as above set out, recite that the petition was filed with the clerk on any day before the May term of the county court at which it was acted upon by the court. The question for decision under this clause of the statute is whether the statute is merely *directory* or whether it is *mandatory*. We are of opinion that it is *mandatory*. We think that it means what it says, and that, in order to give the county court jurisdiction to grant the license, a petition, conformable to the statute, must have been filed with the clerk of the court and presented to the court by the clerk *at the next term after being so filed*. We think that the plain object of the statute

was to prevent what appears to have happened in this case,—to prevent the application being filed on a day of a term of the county court when the court is in session, and being acted on immediately by the justices, without an opportunity on the part of dissenting citizens to be heard. It seems clear to us that the provision of the statute requiring it to be, by the clerk, laid before the justices at the next term after being filed with the clerk, was intended to secure that delay which is ordinarily necessary to enable remonstrating citizens to make such an investigation as will satisfy them whether or not the petitioners are a majority of the assessed tax-paying citizens of the municipality. We wish carefully to avoid being understood as deciding any controverted question of fact in this case. We understand that the common-law writ of *certiorari* is not a substitute for an appeal or writ of error, but that, in the use of this writ, the superintending court is limited to what appears, or fails to appear, on the face of the record of the inferior court. But the fact, seemingly disclosed by the affidavit of Mr. Moody, that the persons signing this petition for a dramshop license may not have constituted more than one-third of the assessed tax payers of the county, while not referred to as a ground of our decision, is nevertheless suggestive as an argument in favor of our view of the meaning of this clause of the statute.

VI. This suggests another question, which, though not necessary to our decision, deserves observation. When the remonstrance of the citizens was presented on June 17, supported by the exhibit marked "A," which included the affidavit of Mr. Moody, which affidavit exhibited a state of facts which, if true, showed beyond question that the justices had acted illegally, in granting the license, without having before them a petition signed by a majority of the " assessed tax-paying citizens of the township," they refused to reconsider their action, and, according to their record above recited, placed their refusal upon the apparent ground

The State ex rel. Campbell v. Heege.

that they had exhausted their power by making the order on the third of June. Their record recites: "It now appears to the court that, on the third day of June, 1889, a dramshop license was issued and granted to him by order of the court, and the same is *therefore* approved;" which can only be understood as meaning that, *because* the justices had granted it, whether rightly or wrongly, it was now, therefore, approved. We are of opinion that, where any judicial or *quasi* judicial tribunal holds regular terms in pursuance of law, any judicial or *quasi* judicial act done by the court remains within the power of the court for amendment, revision or revocation until the lapse of the term; and we have so held.

The judgment of the court is that the order of the county court of the county of St. Louis, entered on June 3, 1889, and approved by said court on June 17, 1889, granting to Henry Horch a license to keep a dramshop in Webster Groves for six months from the third day of June, 1889, be reversed, quashed and annulled.

Judge BIGGS concurs. Judge ROMBAUER is absent.