See also 88 F.Supp. 609.

### BECKER v. BUDER et al.
No. 5883.

United States District Court
E. D. Missouri, E. D.
Jan. 13, 1950.

Walter J. Schuwerk of Evansville, Ill., and William W. Crowdus and William E. Buder, both of St. Louis, Mo., for plaintiff.

Taylor Sandison of St. Louis, Mo., for defendants Gustavus A. Buder and Pontiac Realty Company.

Arthur U. Simmons, pro se.

Eugene H. Buder, of St. Louis, Mo., for defendant Oscar E. Buder.

HULEN, District Judge.

Defendants filing motions for new trial, identical in form, attack the judgment on one ground, i.e. alleged error in holding plaintiff has a right to maintain this action by virtue of Section 272, Mo.R.S.A., Laws of Missouri 1943, page 128. In view of argument presented we will supplement our memorandum deciding the case on its merits.

■ Defendants have insisted from the beginning of this litigation, and we have agreed, that the cause of action upon which plaintiff seeks recovery accrued in Missouri. Whether the complaint be interpreted as seeking recovery of (1) certificates representing shares of stock, or (2) shares of stock, plaintiff does ask for delivery of specific personal property with the right to possession based on the contract of June 21, 1933. This contract is a chose in action. Shoecraft v. Trustees of Internal Imp. Fund, 124 U.S. 730, 8 S.Ct. 686, 31 L.Ed. 574. Assets of a nonresident decedent's estate, whether they be shares of stock, certificates representing shares of stock, or choses in action, are specifically covered by Section 272.

■ As pointed out in our memorandum on the merits (page 4), Section 272, when applied to the facts in this case, forces us to draw two conclusions. First, "*No* letters of administration [could] be granted" here in Missouri as to the asset here in suit. Defendants in their brief argue that this provision "has nothing to do with appointment of an ancillary administrator in Missouri when needed in order to maintain a suit to recover assets, enforce a contract, or deal with any other asset of the decedent." It is undisputed that Herman C. Becker left no assets in Missouri other than that here sued on, and the language of Section 272 creates no exception, by inference or otherwise, which would permit appointment of an ancillary administrator in the event suit to recover the assets covered by that section becomes necessary, as in this case.

■ The second conclusion—an obligor could (and upon demand *should*) deliver

the specified assets to a foreign domiciliary administrator or executor without fear of liability for local claims.

■ Defendants contend the words "may be transferred" in the 1943 law have a significance adverse to plaintiff's power to sue on the chose in action. Consideration of Section 272 as a whole shows that if assets are of the character involved in this case and the circumstances are as are here presented, no discretionary power is left to anyone to make delivery of the assets. The word "may" appearing in this statute is for the benefit of persons holding the assets described. No rights are conferred but a forum is provided to enforce the rights. Under these conditions the word "may" as used in the statute should be construed as mandatory. State ex rel. Gazzalo v. Hudson, 13 Mo.App. 61; Trail v. Trail, 56 W.Va. 594, 49 S.E. 431; State ex rel. Birkeland v. Christianson, 179 Minn. 337, 229 N.W. 313; Chicago Public Stock Exchange v. McClaughry, 148 Ill. 372, 36 N.E. 88; Washington County v. Davis, 162 Ark. 335, 258 S.W. 324; State ex rel. South Dakota Game and Fish Comm. v. O'Neill, 62 S.D. 522, 254 N.W. 265.

■ A Probate Court in Missouri has no jurisdiction to appoint an administrator unless there be assets in the estate. Here we have an estate with no assets in Missouri other than those covered by Section 272, and as to them the law forbids an appointment.

Defendants trace the history of Section 272 prior to the amendment of 1943. The resemblance to present Section 272 is not very great. Under the law as of 1909 a public administrator was given power to administer all assets in Missouri of the kind now covered by Section 272. It may serve some purpose to look to the purpose of the old statutes. In Troll v. Third Nat. Bank of St. Louis, 278 Mo. 74, 211 S.W. 545, 548, the law of 1909 was construed. Commenting on the purpose of the law, the Court said:

"The purpose of this * * * clause was to give the public administrator the power to act for the protection of the estate, whether the party died testate or intestate. This, because the foreign administrator or executor of a person dying testate in another state acquires no right to protect the Missouri estate. Our courts are not open to him, but they are open to our public administrators, and other ancillary administrators appointed by our probate courts."

To hold the Legislature gave to the public administrator a right of possession of assets of the kind here involved, under the circumstances here presented, by the law in effect in 1909 § 302, Mo.R.S.1909, Mo. R.S.A. § 299, for the purpose and with "the power to act for the protection of the estate," and then amended the law in 1943 by taking from the public administrator such right of possession, and placing it in the domiciliary administrator, without at the same time giving to the domiciliary administrator the same "power to act" to protect the assets in the hands of the domiciliary administrator, does not impress us as logical. Such a conclusion would mean the Legislature has doubly barred the door to protection of assets of a non-resident's estate—not only by depriving the public administrator of the right to possession to protect the property, but also by the provision that "no administrator" shall be appointed.

In Sheehan v. First Nat. Bank, 346 Mo. 227, 140 S.W.2d 1, 4, the contest for possession of assets in the estate of a non-resident was between the public administrator, holder of the assets, on the one hand, and the domiciliary administrator on the other, the latter being a party to the suit. The case arose in 1934 under Section 273, R.S. Mo.1929, which was the last statute prior to amendment of 1943. Under the law as it existed in 1934, the Supreme Court approved an order of the Probate Court delivering the property to the non-resident widow administratrix on a finding:

"In the petition before us it is stated that the Probate Court has decided this question against plaintiff, by holding in favor of *the right of the widow to administer this estate here, in* the manner provided by Sec. 273, *by reason of being the foreign domiciliary administratrix,* and has by its order

vested title to the property in her." (Emphasis added.)

By amendment of Section 273, R.S.Mo. 1929 (Section 272 in 1939 revision) in 1943 the requirement of a Probate Court order was deleted from the law. Looking at the present act and the one just preceding it, it appears that under the old law affirmative action by the domiciliary administrator was required. By the amendment of 1943 failure to act results in the transfer without an order of the Probate Court. The statute is self-operative. We think it reasonable to conclude that if under the old law *"by reason of being the foreign domiciliary administratrix,"* such person could *"administer this estate here* [Missouri] *"* it follows that the same is true under the amended law for the same reason. Implied authority to institute action to protect assets of a non-resident's estate is present in the old and new Act to the same degree.

With the decision in the Sheehan case before it the Legislature amended the law in 1943. The title in the new Act is very long and among other things contains this language: *"and providing for the transfer, payment or delivery of such stocks, bonds, credits or choses in action after the expiration of such period;"* (emphasis added).

█ When the title provides for transfer to the domiciliary administratrix of "choses in action", which is the basis of claim to the asset involved in this case, we think notice was conveyed that the statute implied procedure to protect the rights of the domiciliary administrator in assets covered by the Act, based on the chose in action. Of what value is a chose in action if one cannot enforce it? When we consider the nature of a chose in action we think transfer must be presumed to include procedure to enforce it and recover the assets represented thereby.

"The term 'choses in action' is one of comprehensive import. It includes the infinite variety of contracts, covenants, and promises which confer on one party a right to recover a personal chattel or a sum of money from another *by action."* (emphasis added) Sheldon v. Sill, 8 How. 441, 49 U.S. 441, 12 L.Ed. 1147.

█ We therefore rule against defendants' claim that the title of the 1943 Act does not generally indicate the Act contains authority for a foreign domiciliary administrator to sue on a chose in action covered by the Act. Edwards v. Business Men's Assur. Co., 350 Mo. 666, 168 S.W.2d 82; State ex rel. Mueller Baking Co., v. Calvird, 338 Mo. 601, 92 S.W.2d 184; State ex rel. Lorantos v. Terte, 324 Mo. 402, 23 S.W. 2d 120.

To deny the domiciliary administrator a forum to enforce his rights in the assets, in Missouri, of the non-resident decedent, and at the same time deny right of ancillary administration on those assets in Missouri, would lead to taking property without due process of law. That conclusion we avoid if possible.

Defendants assert they have found no case interpreting Section 272 in accordance with our opinion deciding this case. On the other hand we have found no case and defendants have cited none interpreting the statute contrary to our holding. It is a comparatively new statute.

### Order

Motion of defendant Arthur U. Simmons, Administrator, etc., for new trial, and motion of said defendant to amend findings of fact, conclusions of law, and judgment and decree; and motion of defendants Gustavus A. Buder, Individually and as Trustee, etc., and Pontiac Realty Company, for new trial, and motion of said defendants to amend findings of fact, conclusions of law, and judgment and decree, are overruled.