STATE OF MISSOURI ex rel., MARK GUMPERTS, Respondent, v. CHARLES P. HIGGINS, Excise Commissioner, Appellant.

| 84 | 531 |
| 99 | 8 80 |

St. Louis Court of Appeals, May 8, 1900.

1. **Mandamus: EXCISE COMMISSIONER: TO ISSUE DRAMSHOP LICENSE.** Proceeding by mandamus to compel excise commissioner, at the end of the first six months, to issue a second license for another six months on a petition containing a bare majority of the property owners with the required bond, license fee, etc., tendered at the time of applying for such renewal license.

2. ——: ——: **RETURN: MOTION FOR WRIT TO BE MADE PEREMPTORY.** On this state of the pleadings an issue of law, only is raised which requires the construction of the Dramshop Act (articles 1 and 2, chapter 22, R. S. 1899), whether granting a second license for a period of six months on a petition good for twelve months constitutes a ministerial or judicial act.

3. ——: ——: ——: **JUDICIAL DISCRETION.** If the Dramshop Act clothes the commissioner with judicial or discretionary powers, he can not be compelled by the writ of mandamus to issue the license.

4. ——: ——: ——: **NOT CONCLUSIVE: NOT RES ADJUDICATA.** The fact that the commissioner found when the petition was first presented to him that it was sufficient, and the applicant was a man of good moral character, is not conclusive, nor *res adjudicata*, as the commissioner may, and it is his duty to ascertain, before issuing the second license that applicant is, as when the first license was issued, a man of good moral character, and otherwise qualified as the law demands, and if he is not, refuse to issue to him the license.

5. ——: ——: ——: **PETITION FOR DRAMSHOP.** The office of the petition is to confer jurisdiction on the commissioner or court to issue license to the applicant, and is good for one year from the date of its filing, but it gives no rights whatever to the applicant for license, nor does it bind the tribunal to which it is addressed to grant a license.

State ex rel. v. Higgins.

6. ——: ——: ——: LICENSE ISSUED BY COUNTY CLERK. The county clerk may issue license in vacation, but the same must be reported to the county court, and whether issued by the clerk or the court, the act is a judicial one.

7. ——: ——: ——: CONSTRUCTION OF SECTION 3001, R. S. 1899. Section 3001, Revised Statutes 1899, should be construed so as to harmonize with the other sections of the act, relating to the same subject-matter, and this should be done even though it must be held to be inconsistent with the other sections of the act and nugatory.

8. ——: ——: JURISDICTION TO ISSUE LICENSE: IN COMMISSIONER AND COUNTY COURT, ONLY. Thus construing section 3001, it is held, that the jurisdiction over the issuance of licenses to keep a dramshop does at no time pass from the county court or excise commissioner in cities of the class named, and whether it be the first or second license under the petition, the issuance thereof is addressed to the sound discretion of these tribunals, and that discretion is not the subject of control by mandamus.

Appeal from the St. Louis City Circuit Court.—*Hon. Jacob Klein*, Judge.

REVERSED.

No briefs filed by either party.

BLAND, P. J.—The substance of the petition is, that on the first day of July, 1899, the relator presented to Charles P. Higgins, the excise commissioner of the city of St. Louis, his written application for a license to keep a dramshop at number 100 North Jefferson avenue in said city for a period of six months, and thereafter on July 3 filed with said commisssioner the petition of the property owner in numbers, location, etc., as required by law, and that on his application and said petition a license was issued to him to keep a dramshop at said number for a period of six months; that at the expiration of his license, to-wit, on January 3, 1900, he made written application to the commissioner for a renewal of his said license for another period

of six months, and offered the requisite bond, license fee, etc., to entitle him to such license, but that the commissioner arbitrarily and without cause, refused to issue him the license.

For return to the alternative writ which was issued and served, the commissioner admitted the issuance of the license for a period of six months from July 3 to January 3, 1900, admitted the application for a second or renewal license for another period of six months, and his refusal to issue the same, and as grounds for such refusal alleged that the petition for the license filed July 3 was signed by a bare majority of the taxpaying citizens and guardians of minors who were eligible to sign said petition; that when he issued the license on July 3 he believed relator to be a law-abiding citizen and a man of good moral character; that when the application was made for the second or renewal license he made inquiry and ascertained that relator was not a law-abiding citizen, nor of good moral character, and charged that relator, since the issuance of the first license, had been guilty of the following misdemeanors and violation of the dramshop law, to-wit:

First: That he had in violation of the dramshop law kept a disorderly house during the period of his license; that shooting affrays had occurred in his saloon and certain persons named had been shot.

Second. That he had conducted or permitted to be conducted games of chance for money and property in his saloon, and had set up slot-machines therein for the purpose of being used for playing games of chance thereon for money or property, and that persons had been arrested for gambling in his saloon and had been convicted of the offense of gambling committed in relator's saloon.

Third. That he kept a piano in his said saloon, and that the same was used for the purpose of making music therein.

Fourth.    That at the expiration of his license he had continued to conduct his dramshop without a license.

The relator moved the circuit court to award him a peremptory writ of mandamus, notwithstanding the return. This motion was sustained and a peremptory writ was awarded.    After unavailing motions for new trial and in arrest the commissioner appealed.

1.    The motion for judgment on the pleadings is in the nature of a demurrer and raises an issue of law only. State ex rel. v. Simmons Hardware Company, 109 Mo. 118.

2.    The question of law presented by the pleadings is this:    After having granted a first license for a period of six months on the application of the licensee and petition of a bare majority of the property owners in the block where the dramshop is kept, is the excise commissioner of the city of St. Louis, after the expiration of the first license, bound to issue a second license for six months, on the application of the licensee and a tender of the license fee and a good and sufficient bond?    To correctly answer this question we must ascertain whether the Dramshop Act (Articles 1 and 2, chapter 22, R. S. 1899) in providing for the grant of a second license for a period of six months on a petition good under the law for twelve months confers on the commissioner a mere ministerial function, or whether he is invested with judicial or discretionary powers to grant or not to grant the second license.    If the Act clothes him with the latter power, then it is clear he can not be compelled by the writ of mandamus to issue the license.    State ex rel. v. Francis, 95 Mo. 44; State ex rel. v. Cramer, 96 Mo. 75; State ex rel. v. Board of Health, 103 Mo. 22; State ex rel. v. Smith, 105 Mo. 6; State ex rel. v. Flad, 108 Mo. 614; State v. Oliver, 116 Mo. 188; State ex rel. v. Rombauer, 125 Mo. 632; State ex rel. v. Lutz, 136 Mo. 633.    The sale of intoxicating liquors being illegal because of its tendency to deprave public

morals (Austin v. State, 10 Mo. 591; State ex rel. Moore et al., 84 Mo. App. 11, the Dramshop Act which permits their sale under a license should as to the grant of such license be interpreted most favorably to the public, and should a doubt arise as to the discretion of the excise commissioners or county courts to grant or refuse to grant a license, the doubt should be resolved in favor of the tribunal to whom the authority to grant licenses has been committed. It is conceded on all sides that where a majority only of the property owners in the block where the dramshop is to be kept sign the petition for license, that it is in the discretion of the commissioner to grant or not to grant the license. The contention is that after he has passed on the petition and the application and found them sufficient, and has found the applicant to be a man of good moral character, and on these findings granted a license for six months, these findings are in the nature of an adjudication in favor of the applicant and continues in force during the life of the petition of the property owners, to-wit, twelve months. The effect of section 2997 of the Act is to adopt in a restricted sense the policy of local option. This option is exercised through the petition required by the section, which must be signed by the requisite number of property owners before the county court or excise commissioner (in cities of 200,000 inhabitants or more), can lawfully issue the license. The petition is a prerequisite to the exercise of jurisdiction to issue licenses. State ex rel. v. Higgins, 71 Mo. App. 180. The office of the petition is to confer jurisdiction to issue license to the applicant, and this jurisdiction continues for one year from the date of the petition. It confers no rights whatever on the applicant for license, nor does it make it obligatory on the tribunal to which it is addressed to grant a license. Its sole office is to authorize the tribunal to act, and to grant or to refuse the

license.   While the petition is good for twelve months, no license can be granted for any period other than six months. R. S. 1899, sec. 2993; State ex rel. v. Moore et al., *supra*. And before any license can be rightfully granted, the county court granting the same must be of the opinion that the applicant is a law-abiding, assessed, tax paying, male citizen over twenty-one years of age (section 2993, *supra*).   In addition to these qualifications if the application is made to an excise commissioner, the commissioner must find that the applicant is a person of good moral character (section 3020, R. S. 1899).   If the applicant is found not to possess these qualifications, he is not entitled to a license, and none should be granted him, even if his petition is signed by two-thirds of the property owners eligible to sign his petition.   The object of the Act is to confine the sale of intoxicating liquors by the drink to a class of male persons who are law-abiding, and who from age and character will presumably conduct the business in an orderly and seemly manner and with as little offense to the moral sense of the community, where the dramshop is located, as possible.   One of the means adopted by the legislature to accomplish this purpose, is to limit the life of the license to six months, and thus afford the tribunals entrusted with the granting of them, frequent opportunities to inquire into the fitness of those to whom it had granted a license, to have that license renewed.   But it is contended that as section 3001 of the Act is mandatory on clerks of county courts to grant a second license at the expiration of the first, that the grant of the second license, whether by the clerk, court or a commissioner, is but a ministerial act.   This argument might be answered by stating that as the excise commissioner has no clerk, the section has no application to him or to his office.   But the argument is erroneous as applied to licenses issued by a county court.   The section must be construed in connection with the next two succeeding

sections. Section 3003 requires the clerk to report all licenses granted by him to the county court at its next term. Section 3002 provides, that "any person licensed by the clerk as a dramshop keeper who applies to the county court to have such license renewed  *  *  *." The license issued by the clerk must be for six months. If the action of the clerk is final, why should the licensee apply to the county court to have his license renewed, unless it be for the purpose of having the action of the clerk approved and confirmed by the court and the license validated for the full period for which the clerk issued it. The three sections when read together, show that the grant of a license by the clerk in vacation, is but for the convenience of the dramshop keeper and to prevent him from being forced to close up his place of business, until the next term of the county court, in the event his first license should expire in vacation of the court, and that the license issued by the clerk in vacation, to be good for six months, must be reported to the court, and be by it renewed. Any other construction of the Act might result in absurdity. To illustrate, no license can be issued to other than a male citizen. Suppose a female should array· herself in male attire, assume the name, voice and manner of a male, and secure a license to be issued to her, in ignorance of her sex—if before the expiration of the first license the commissioner should discover her sex, would he be compelled to issue her a second license, in violation of the Act? Because he was imposed on and led into error when he issued the first license, must he commit a second error, simply because he committed a first one; or, should he obey the mandate of the law and refuse the license? The question furnishes its own answer, his duty would be to obey the law and refuse the license. Again, suppose the commissioner in good faith should issue a license to one whom he believed to be a law-abiding citizen with a good moral character,

and before the expiration of the first license he should discover that the licensee within two years had been convicted of a violation of the Dramshop Act in some other city or county in this state, or that he had set up a musical instrument in his place of business to be performed on therein, or had kept gambling devices in his place of business and had permitted games of chance for money or property to be played thereon, or had kept a disorderly house, all of which acts are in violation of the Dramshop Act, and are conclusive evidences that the Dramshop keeper is not a law-abiding citizen nor a man of good moral character. Must the commissioner stultify himself by issuing a second license and thereby certify to the good character of the Dramshop keeper? Is he compelled because he issued the first license, to issue the second one, although he knows the applicant to be disqualified under the law to have a license, and although he knows that his dramshop has been conducted in a manner prohibited by law? Yet this is what he must do if the grant of the second license is only a ministerial duty. Such a construction of the Act leads to the absurdity that would compel the commissioner in complying with one requirement of the Act to violate other fundamental provisions of the same Act, and provisions, too, which were incorporated in the Act for the protection of society against the disturbances and immoralities that necessarily flow from a disorderly conducted dramshop. The jurisdiction to issue licenses to keep a dramshop has been conferred upon the county courts of the several counties, and to an excise commissioner in cities of 200,000 inhabitants or over. Section 3001 which makes it obligatory on clerks of the county court to issue a second license in vacation of the court, should not be construed as taking away or limiting the jurisdiction of the court which is invested with jurisdiction of the whole subject-matter of issuing these licenses, but should be construed so as to

harmonize with the other sections of the Act relating to the same subject-matter, and this should be done even if this section should be found inconsistent with other sections of the Act.   State to use v. Heman, 70 Mo. 441; Cole v. Skrainka, 105 Mo. 303; Kane v. Railroad, 112 Mo. 34.   So construing the section, we hold that the jurisdiction over the issuance of the license at no time passes from the county courts or the excise commissioner in cities of the class named. That the issuance of such license, whether first or second, is addressed to the sound discretion of these tribunals in each case, and that the exercise of this discretion is not the subject of control by mandamus.

Judgment reversed. Judge *Bond* concurs; Judge *Biggs* absent.