COOPER, Appellant, v. HUNT et al., Respondents.

**St. Louis Court of Appeals, December 1, 1903.**

1. **DRAMSHOPS: Petition for: Excise Commissioner of St. Louis.** Section 2997, Revised Statutes of 1899, providing that an application for a dramshop license shall be supported by the petition of a majority of the "assessed, taxpaying citizens and guardians of minors owning property in the block," governs applications in the city of St. Louis to the excise commissioner.

2. ———: ———: ———: The Act of 1901 (p. 142, Laws 1901) which provides that a petition for a license shall be on file in the office of the clerk of the county court for not less than ten days, applies in St. Louis to the office of excise commissioner, and where such a petition was filed on December 2d, a license granted on it December 8th is void.

3. ———: **Validity of License: Certiorari.** The accepted mode of testing the validity of a dramshop license, when the facts necessary to determine its validity appear of record, is by certiorari.

4. ———: **Petition: False Statement to Induce Signers: Equitable Relief.** A false statement, by a petitioner for a dramshop license, that a certain person intended to sign his petition, made for the purpose of inducing others to sign it, is no such statement as would authorize equitable relief in an action to annul the license.

5. ———: **False Promise: Equitable Relief.** A false promise by the petitioner for a dramshop license, to withdraw his application, where there is no averment that the plaintiff relied upon the promise or was deceived by it, is not ground for equitable relief in a proceeding to annul the license.

6. ———: **Excise Commissioner: Granting License: Judicial Act: Finding Conclusive.** In granting a dramshop license, the excise commissioner acts judicially and, where he has acquired jurisdiction, his finding of the facts upon which his right to grant the license depends, is conclusive. It must be presumed that he acts from convictions based on a knowledge of the facts.

7. ———: ———: **Jurisdiction.** The excise commissioner acquires jurisdiction to grant a license on the presentation of a petition reciting that the subscribers are a majority of the assessed taxpaying citizens and guardians of minors, owning property in the block.

8. ———: **Equitable Relief: Certiorari.** In the absence of fraud or corruption, there is no ground for equitable relief to cancel a dramshop license, when the facts, relied upon as a cause of action, are either matters of record before the excise commissioner, which could be reached by certiorari, or are such that the commissioners finding concerning them precludes further review.

Appeal from St. Louis City Circuit Court. —*Hon. D. G. Taylor,* Judge.

AFFIRMED.

*Myron Westover* for appellant.

(1) The keeping of a dramshop is not a right but a privilege to be granted only under the strict provisions of the statute. Austin v. State, 10 Mo. 591; State v. Holt Co. Ct., 39 Mo. 521. (2) There is no authority vested with jurisdiction to issue license until a majority of the qualified persons sign petition. R. S. 1899, sec.

2997. (3) The excise commissioner must investigate qualifications of signers. He has no power unless they are qualified. R. S. 1899, sec. 2997; Snoddy v. County, 45 Mo. 361; Railway v. Young, 96 Mo. 39. (4) Petition for license must remain on file, open to public inspection for ten days, otherwise license is void. R. S. 1899, sec. 2997, amended Laws 1901, p. 142; State ex rel. v. Seibert, 71 S. W. 95. (5) Signers may withdraw their signatures. R. S. 1899, sec. 2997. (6) A void license may be questioned collaterally as a void judgment may, to determine whether the court or commissioner had jurisdiction. Cloud v. Inhabitants, 86 Mo. 357; Crow v. Myersick, 88 Mo. 415; Adams v. Cowles, 95 Mo. 507; Presbyterian Church v. McElhinney, 61 Mo. 543; Railway v. Reynolds, 89 Mo. 147; Hutchinson v. Shelly, 133 Mo. 412-13; Williams v. Monroe, 125 Mo. 584-588; Blodgett v. Shaffer, 94 Mo. 652; Mullins v. Rieger, 169 Mo. 532; Rosenberg v. Gibson, 165 Mo. 16; Board v. Drummond, 167 Mo. 60. (7) An unauthorized dramshop is a nuisance, *per se,* and defendant Hunt, though acting under color of a license, may be enjoined in equity. State v. Uhrig, 14 Mo. App. 413; High on Injunction, sec. 748; Hayden v. Tucker, 37 Mo. 224; State ex rel. v. Zachritz, 166 Mo. 307; Bank v. Kercheval, 65 Mo. 688; Railway v. Railway, 69 Mo. 71; Coal Companies v. City, 130 Mo. 323; Railway v. Springfield, 85 Mo. 674; Haggard v. Stehlin, 137 Ind. 43; Crawford v. Tyrrell, 128 N. Y. 421. (8) Equity will enjoin the collection of a judgment procured by fraud. Hamilton v. McLean, 169 Mo. 71, distinguishing; Wonderly v. Lafayette Co., 150 Mo. 635; Meyers v. Miller, 55 Mo. App. 338.

*Kehr & Tittmann* and *Marion C. Early* for respondents.

(1) The petition signed and filed by Hunt on November 15, 1902, and signed by a large number of petitioners in his behalf, was a part of the record. It con-

tained the recital that the petitioners were a majority of the assessed taxpaying citizens and guardians of minors owning property in block 1038, etc. Hence, that petition conferred jurisdiction upon the excise commissioner to act. State ex rel. v. Moniteau County Court, 45 Mo. App. 388; State ex rel. v. Higgins, 71 Mo. App. 184. (2) The ten days during which the petition must remain on file open to public inspection, began to run on November 15, 1902. After the expiration of ten days from that date, the excise commissioner had power to grant the license. He granted it on December 8, 1902, which was more than ten days after the filing of the petition. (3) The petition alleges and it is the law, that in the city of St. Louis, the excise commissioner is vested with sole authority and jurisdiction to grant dramshop licenses and in issuing such dramshop licenses, he acts "judicially and not ministerially" in obedience to his opinion and judgment. State ex rel. v. Heege, 37 Mo. App. 338; State v. Evans, 83 Mo. 322; Railway v. Whalen, 3 Wash. 452; Leigh v. Westervelt, 2 Duer 618. (4) And it is for him to say whether the applicant is a person of good moral character and whether or not the preliminary petition required by law has been signed by a majority of the assessed taxpaying citizens, etc. So "whether the petitioners were in fact assessed taxpaying citizens such as is required by law, or whether they were a majority or whether some names on the petition were forged, were questions of fact for the county court" and which the circuit court has no right to pass upon. State v. County Court, 45 Mo. App. 391; State v. Evans, 83 Mo. App. 322; State v. Cauthorn, 40 Mo. App. 99. (5) A licensed dramshop is not a. nuisance *per se.* That which is authorized by the Legislature can not be a nuisance *per se.* Williams v. Railroad, 18 Barb. 222; Leigh v. Westervelt, 2 Duer 618. (6) When the apprehended injury is contingent, is not a nuisance *per se,* but may or may not become so accord-

ing to circumstances, and when it is uncertain, indefinite or contingent, or productive of only possible injury, equity will not interfere. 1 High on Injunctions, 742, p. 568; McDonough v. Robbens, 60 Mo. App. 156; Holke v. Herman, 87 Mo. App. 125; 10 Am. and Eng. Ency. of Law, p. 836, and cases cited; Pfingst v. Senn, 23 S. W. 358, and large number of analogous cases cited. (7) Equity can not be invoked to restrain a consequential injury necessarily resulting from the lawful exercise of a right granted by the sovereign power of the State or authorized by competent municipal authority. Williams v. Railroad, 18 Barb. 222. (8) If the excise commissioner has exceeded his jurisdiction and the license by him is invalid, the remedy is by *certiorari* and not by injunction. Leigh v. Westervelt, 2 Duer 618; Railroad v. Whalen, 3 Wash. 452.

GOODE, J.—Plaintiff avers that she is the owner of two parcels of ground in city block 1038, in St. Louis, one fronting on the north line of Lucas avenue and the other on the south line of Morgan street. One of plaintiff's parcels adjoins premises known as number 3201 Lucas avenue, owned by the defendant Ella Pechmann. Plaintiff's property in the block is occupied by sixteen dwelling houses rented to tenants. The defendant Charles M. Hunt was granted a license by the excise commissioner of the city of St. Louis December 8, 1902, to conduct a saloon at number 3201 Lucas avenue, which premises are averred to have been leased to him by Ella Pechmann on condition that Hunt secure a valid license to keep a dramshop therein, the lease not to be binding if the license should be revoked or declared invalid. The object of this suit is to have the dramshop license granted to Hunt declared void and cancelled; to restrain him from conducting a saloon on the premises 3201 Lucas avenue, and to restrain Ella Pechmann from renting said premises for use as a saloon. Plaintiff avers that

she will suffer special damages from the existence of a saloon in the block, on account of her large property interests therein and the purpose for which her property is rented, to-wit, as residences.    The allegations on which relief is prayed against the license are these: Hunt's first petition for license, filed with the excise commissioner November 15, 1902, was not signed by a majority of the assessed taxpaying citizens and guardians of minors owning property in city block 1038, but only by seven persons; after filing said petition, to-wit, November twenty-third, Hunt declared to the plaintiff that he had withdrawn his application for a license on account of the opposition in the neighborhood; a false statement, as Hunt never withdrew his application but, on the contrary, filed another petition December second, purporting to be signed by seven other persons as petitioners; the excise commissioner on the same day (December second), determined that there were twenty-two persons eligible under the law to sign a petition for license to keep a dramshop in the block and that twelve of said eligible persons had signed Hunt's petition; thereupon, on December second, the excise commissioner issued a statement that on the payment of a license tax and the presentation of the proper receipts, he would grant a license to Hunt, and did grant one to him December 8, 1902.

It is further alleged that of the seven names appearing on the petition filed November fifteenth, those of W. O. and Emma E. Thomas were signed to a remonstrance against granting the license, in the same handwriting as the signatures of those names to the petition, and that the remonstrance was filed with the excise commissioner November 21, 1902; that the name of Mrs. M. Reckinger on the petition of November fifteenth was not the name of any person owning property in city block 1038, and that the names of Sarah L. Rodomsky and M. Reckinger were not signed by any person having authority to sign the petition.    The meaning of this

averment, as shown by the general tenor of the petition, is not that the names of those parties were forged, but that the parties were ineligible to sign. Moreover, as there were fourteen petitioners in all, there could have been a majority of the twenty-two persons eligible to sign after rejecting said two names. In regard to the signatures of W. O. and E. E. Thomas, the averment is that they first signed Hunt's petition on a representation made by him that he had an appointment with J. Rodomsky, who would sign it on presentation, which statement turned out to be false, and on discovery that it was false the Thomases signed the remonstrance.

The case went to trial, but the court excluded most of the evidence offered by the plaintiff. In addition to proffering proof of the above averments, plaintiff offered to prove that not only were the names of M. Reckinger and Sarah Rodomsky signed to the petition of December second by persons without authority to sign said names, but that the remaining five names signed to it were those of persons who did not own property located in block 1038, had not paid any taxes on property located therein and that the excise commissioner made no effort to ascertain the facts.

The statutes of the State require an application for dramshop license to be supported by the petition of a majority of the assessed, taxpaying citizens and guardians of minors owning property in the block in which the dramshop is to be kept. R. S. 1899, sec. 2997. The statutes govern applications for license not only to county courts, but, as well, applications in the city of St. Louis to the excise commissioner. That officer is required to keep a record, among other things, of petitions for dramshop licenses and remonstrances against granting them; all of which are to be open to the inspection of any person who desires to inspect them. R. S. 1899, sec. 3022. It is further provided that a petition for license shall be on file in the office of the clerk of the county court and, by reasonable construction, in this

city in the office of the excise commissioner, not less than ten days before the license is issued, for public inspection. Session Acts 1901, p. 142.

In State ex rel. Waggoner v. Seibert, 97 Mo. App. 212, 71 S. W. 95, we decided that the excise commissioner has no jurisdiction to issue a dramshop license unless a petition has been on file for ten days.

If the license in this case was granted on the petition of December second, the act was done without jurisdiction and the license is void. But the accepted mode of testing the validity of a dramshop license, when the facts necessary to determine its validity appear of record, is by *certiorari*. State ex rel. v. Heege, 37 Mo. 338; State ex rel. v. Higgins, 71 Mo. App. 180; State ex rel. v. Seibert, supra. As petitions and remonstrances are to be kept as public records by the excise commissioner, the particular point under advisement can be ascertained in a *certiorari* proceeding, and we think the other points raised by plaintiff can too. If the Thomases withdrew their names from the petition and subscribed them to a remonstrance, that fact would appear of record. It is to be observed that the alleged false statement made to them by Hunt that one Rodomsky intended to sign Hunt's petition is certainly no such statement as would authorize equitable relief; for Rodomsky's action would be no good reason for theirs; and, besides, the representation related to a future event. Estes v. Desnoyers Shoe Co., 155 Mo. 577.

As to the allegation that Hunt promised plaintiff to withdraw his application for license, it is enough to say there is no averment that plaintiff relied on the promise or was deceived by it and lulled into inactivity. We do not decide that in any event plaintiff could proceed to annul the license on such a misrepresentation, a ruling on that point not being compelled to dispose of the case.

In granting dramshop licenses, the excise commissioner acts judicially and his finding of facts we understand to be conclusive. He must have jurisdiction

before he can proceed; but he acquired jurisdiction in the present case on the presentation of a petition reciting that the subscribers were a majority of the assessed, taxpaying citizens and guardians of minors owning property in the block. State ex rel. v. Heege, supra; State ex rel. v. Cauthorn, 40 Mo. App. 94; State ex rel. v. Moniteau Co. Ct., 45 Mo. App. 387; State ex rel. v. Higgins, supra. The excise commissioner unquestionably had jurisdiction to proceed with the matter, and it became his function to determine whether or not the petition was in truth signed by the majority of the eligible citizens, as well as the other facts on which the right to issue a license depended. We think his decision can not be reviewed or revised in this proceeding; but are not prepared to say that if he was imposed on by forged signatures or other fraudulent measures, there could be no relief in favor of a property-owner in the blocks specially injured by the presence of a saloon. Relief by injunction against a fraudulently-procured license for selling pools on a race track was granted to the State in an action instituted by the Attorney-General. State ex rel. v. Zachritz, 166 Mo. 307. The point most insisted on in that controversy was that the State had no interest in cancelling a license surreptitiously procured, but the opinion suggested that the State had a sufficient interest because of the duty incumbent on it to see that its laws are enforced for the protection of citizens—*pro bono publico.* We think it unnecessary to decide whether or not the action of a county court or excise commissioner in granting a license, when that action is induced by the covinous practices of the party licensed, can be annulled and the opening of a dramshop thereunder restrained at the instance of a specially injured property-owner. If the petition of December second was taken as a basis for the license before it had been on file ten days, the license could be set aside in the usual mode; and so, if the excise

commissioner found twenty-two persons had the right to petition, while fewer than a majority of that number in fact petitioned, this flaw is of record. There is nothing to prove the excise commissioner was overreached or fraudulently deceived into believing the signatures were genuine when they were forged, or as to any other material fact. He had all the papers before him and it was his duty to determine whether a majority of eligible signatures were subscribed to the petition. Whether he decided correctly or not, there is no averment or proof that he acted corruptly, or that he was overreached and his decision controlled by fraudulent artifices of either of the defendants.

There is an allegation that the commissioner made no investigation as to the eligibility of any of the subscribers except Early; but we must presume he was satisfied about the matter and acted from a conviction based on knowledge of the facts, whether he investigated or not.

On the whole, it appears that whatever circumstances are relied on by the plaintiff for annulling the license and restraining one of the defendants from carrying on and the other from permitting a saloon, are either matters of record before the excise commissioner, which could be reached by *certiorari*, the procedure commonly adopted in such instances, or are such that the commissioner's finding concerning them precludes further review. Therefore, no equity is presented for injunctive relief. As a general proposition equity does not interfere to annul or restrain action under proceedings that are void on their face. Holland v. Johnson, 80 Mo. 34; Clarke v. Ins. Co., 52 Mo. 272.

Judgment affirmed. *Bland, P. J.*, and *Reyburn, J.*, concur.