STATE OF MISSOURI at the Relation of WILLIAM A. HELLER, Appellant, v. JOHN G. THORNHILL et al., Respondents.

Kansas City Court of Appeals, November 3, 1913.

1. DRAMSHOPS: Granting License: Judicial Act. The power or jurisdiction to grant saloon licenses is vested exclusively in the county court, and, in passing upon an application for a saloon license, the court acts judicially.

2. ———: ———: ———: Two-thirds Petition. The matter of hearing and passing upon an application for a saloon license is judicial whether the applicant claims to have a majority or a two-thirds majority of the persons in the block qualified to sign. Whether an act is ministerial or judicial depends upon the nature and character of the act and the things necessarily involved therein and not upon the allegation in appellant's petition.

3. ———: Mandamus: To Compel Granting of License. Where the record shows that the county court entertained relator's petition for a license and, after listening to the evidence, found that relator's petition did not contain a two-thirds majority of the required signers, and, on this account, refused to grant the license, mandamus will not lie. And where the petition for the writ and the alternative writ show on their faces the existence of such finding by the county court adverse to relator, they state no cause of action.

4. ———: ———: Decision of Preliminary Question. Even upon the theory that such finding is upon a preliminary matter to be determined before the right to act arises, the decision of the county court on such preliminary question of fact, which involves the hearing of evidence and the formation of belief in regard thereto and the reaching of a conclusion thereon both as to fact and law, cannot be reviewed by mandamus because the general nature of the duty to be performed is judicial, and the law intends that such decision shall be final.

State ex rel. v. Thornhill.

5. ———: ———: When Mandamus Will Lie. It is only when the county court refuses to hear the application, or when it has found in relator's favor every fact necessary to the granting of the license, and yet refuses to issue the license, that mandamus will lie.

Appeal from Nodaway Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

AFFIRMED.

*Cook, Cummins & Dawson* for appellant.

*Ellis G. Cook* for respondents.

TRIMBLE, J.—Relator applied to the circuit court of Nodaway county for a writ of mandamus to compel the county court to grant him a license to keep a dramshop in Maryville, a city of more than 2000 inhabitants. Upon the issuance and service of the alternative writ, the judges of the county court, as respondents thereto, moved to quash the petition and writ. This motion was sustained and relator appealed.

The reasons stated in the motion to quash are, first, that the facts pleaded in the petition and stated in the alternative writ are not sufficient to give the circuit court jurisdiction over the acts of the county court complained of; second, that the petition and writ fail to state facts sufficient to constitute a cause of action.

An examination of relator's petition for the writ, and also the alternative writ itself, discloses that on their faces they show that, in the proceeding before the county court to obtain a license, that court, in passing upon the sufficiency of relator's petition for a license, heard the evidence and found and adjudged that said petition did *not* contain a two-thirds majority of the persons qualified by law to sign the same. While relator's petition for mandamus says that his petition

for license did contain a two-thirds majority, yet it also says that the county court heard his case, and, after finding that relator had otherwise qualified himself, *found against him* on the question of whether his petition contained a two-thirds majority, and thereupon refused to grant the license. The case, therefore, is not one where the county court has refused to hear or act upon relator's application, nor is it one in which the county court has found all the necessary questions in relator's favor and yet refuses to issue the license. It is one where the relator pleads that, in his opinion, he had a two-thirds majority petition before the county court, but that said tribunal, "after listening to all the evidence" had found and adjudged that he did *not* have, wherefore, he asks the circuit court to hear the case anew and peremptorily command the county court to grant him a saloon license. This raises the question whether the judgment of the county court, finding that the petition did not contain the required number of signers and refusing the license because of such insufficiency, can be reviewed, or a new trial thereof be had, by mandamus, in the circuit court.

It is conceded that mandamus will not lie to control or review the action of any court where the act complained of is judicial. If, therefore, in hearing and passing upon the matters involved in the determination of the question of relator's right to a saloon license, the county court acts in a purely ministerial capacity, then mandamus can be invoked herein. But if the county court in such matters acts judicially, the writ will not lie.

Our courts have always held that in passing upon an application for a saloon license, the county court acts judicially. [Burkharth v. Stevens, 117 Mo. App. 425; State ex rel. v. Higgins, 84 Mo. App. 531; State ex rel. v. Heege, 37 Mo. App. 338; Cooper v. Hunt, 103 Mo. App. 9.] It has been held heretofore also

that the jurisdiction to grant saloon licenses was vested exclusively in the county court. [State v. Evans, 83 Mo. 319; Austin v. State, 10 Mo. 591; State ex rel. v. Fort, 107 Mo. App. 328; Burkharth v. Stevens, 117 Mo. App. 425; State ex rel. v. Higgins, 84 Mo. App. 531.] This being true, it would seem that mandamus would not lie.

It is urged, however, in behalf of relator that since section 7191, Revised Statutes of Missouri 1909, leaves it *discretionary* with the county court whether the license shall be granted or not if the petition contains *only a majority* of the persons qualified to sign, but makes it *mandatory* where the petition is signed by a *two-thirds majority,* this makes the matter of hearing and passing upon an application for a saloon license, where the applicant *claims* to have a two-thirds majority, a mere ministerial act, and consequently the above decisions do not apply to this case and mandamus will lie. It seems to the writer, however, that whether a certain act is ministerial or judicial depends upon the nature and character of the act itself and upon the things necessarily involved therein, rather than upon what the applicant may claim in his petition for the act. An act cannot be said to be ministerial when it rests upon or is called into existence by the exercise of judgment upon matters of fact. [Teat v. McGaughey, 22 S. W. 302.] Where the duty is such as necessarily requires the examination of evidence and the decision of questions of law and fact, such a duty is not ministerial, and not being ministerial the decision of a public officer to whom the discharge of such duty has been confided cannot be reviewed or reversed in a mandamus proceeding. [Henkel v. Millard, 97 Md. 24, l. c. 31; Duvall v. Swann, 94 Md. 608, l. c. 617-18.] Even in cases where, without the aid of mandamus, there would be a failure of justice, the writ will lie to enforce the performance of

a *strictly ministerial duty only;* and by a strictly ministerial duty is meant one that is absolute and imperative requiring *neither* the exercise of official discretion *nor* judgment. [Wailes v. Smith, 76 Md. 469, l. c. 477.] The general rule is that where a subordinate body is vested with power to determine a question of fact the duty is judicial and though it can be compelled by mandamus to investigate the fact it cannot be directed to decide in a particular way, however clearly it may be made to appear what the decision ought to be. [Abrams v. Hempstead, 45 Hun. 272.] Mandamus will not be granted to compel the performance of an act in a case where numerous questions of law and fact arise, some of them depending upon circumstances which rest in parol proof. [U. S. v. Commissioner, 5 Wall. 563.] Of course under section 7191, Revised Statutes of Missouri 1909, in cities of 2000 inhabitants or more, the county court must grant a license when the the applicant has shown himself qualified therefor, but one of these preliminary requirements and qualifications is that he have a petition signed by a two-thirds majority of the persons in the block who are qualified to sign. But this mandatory duty does not arise until all of these preliminary questions have been decided in the applicant's favor. The statute says *if* the county court shall be of the opinion that the applicant is a law-abiding assessed tax-paying male citizen, and *if* the petition contains a two-thirds majority, etc., *then* the court shall grant the license. And so in all the cases cited, where mandamus was used to compel the county court to act, the county court had found all these preliminary matters *in the relator's favor.* [Beans v. County Court, 33 Mo. App. 635; State ex rel. v. McCammon, 111 Mo. App. 626; Scarritt v. Jackson County, 89 Mo. App. 585; State ex rel. v. Packett, 136 Mo. App. 700; State ex rel. v. Turner, 210 Mo. 77.] The writer has been unable to

find a decision where mandamus was used to compel the county court to act in a case where one of these preliminary questions, resting upon matters of fact requiring the hearing of evidence and the reaching of a conclusion based thereon, had been decided by the county court *adversely* to the relator.

It is true that the decisions in the various States are conflicting upon the question whether mandamus will lie in a case where the duty to act is made mandatory upon an inferior tribunal upon the existence of certain facts being shown. Some of the cases hold that even if the determination of the preliminary questions, upon which the necessity of action rests, does involve the exercise of judgment and discretion, still mandamus will lie. Others, however, hold to the contrary. And in summing up the decisions on this question, Merrill on Mandamus, sec. 48, says: ''The weight of authority seems to be that erroneous decisions as to preliminary questions of *law* may be reviewed by the writ; that erroneous decisions as to preliminary questions of *fact* may be reviewed, *unless the general nature of the duties to be performed are considered to be judicial, or the law intended that such decision should be final.*'' It would seem that, under our laws relating to the granting of dramshop licenses, not only is the general nature of such act considered judicial, but that, as the jurisdiction to grant such licenses is confided exclusively to the county court, the law intended that court's decision should be final. And such has been the general understanding of the Missouri bench and bar, as in every case wherein mandamus was sought to obtain a saloon license, it was always thought necessary that the record of the county court should affirmatively find every preliminary fact in the applicant's favor. Nowhere in the law is there any provision authorizing the circuit court to pass upon the sufficiency of an application for a dramshop license.

If the circuit court in a mandamus case can hear the evidence and decide the questions involved in the granting of a saloon license and order the county court to issue the license, then it is the circuit court, and not the county court, that is granting it. A writ of mandamus cannot be made to take the place of a new trial or writ of error. [State ex rel. v. Flad, 108 Mo. 614; State ex rel. v. Gibson, 184 Mo. 490, l. c. 507.]

The theory underlying the contention that mandamus will lie under the circumstances shown in this case is that the determination of the question whether or not the petition is signed by two-thirds of the persons qualified to sign is a mere ministerial act. But what does the decision of this question involve? It involves much more than the mere inspection of the names on the petition and the comparing of them with those on the last previous annual assessment list and poll of the vote in the city. It involves the delicate questions of residence and citizenship which require the taking of testimony, the investigation of many facts and the forming thereon of conclusions both of fact and law, and about which even experts and learned men differ. A decision on such question involves not only the county court's *belief* of the testimony offered, but of other things. Can the circuit court, by mandamus, compel the county court's *belief* as to matters of fact? If mandamus will lie, the circuit court must either do that or hear the evidence and form its own belief. This would be to try the case *de novo* as on appeal, and mandamus cannot be used to perform that office. Relator prays that the court order the county court to issue him a license. The court, however, could in no event do that until after it had *tried the case* and determined that relator was entitled to a license. Suppose, however, the circuit court should hear the evidence and decide that

relator did not have the required petition, and relator should be of the opinion that he had made a prima facie case and that respondent's (or the remonstrators') evidence was demurrable, could he not appeal to this court? And if so, would we not be called upon to say whether or not we, and not the county court, would grant the license? And if mandamus in such case lies then it would be this court granting a license, a novel idea in our jurisprudence.

But aside from all this, the general nature of the granting of saloon licenses is judicial in character, and hence the county court's action is not reviewable unless every fact necessary to the granting of the license has been eliminated from the case by a finding of the county court in relator's favor. In State ex rel. v. Fitzpatrick, 80 Mo. 601, the Supreme Court, before affirming a judgment in which the peremptory writ was ordered to issue, took pains to say that the county court was required to ascertain and determine whether the petition was signed by two-thirds of the qualified petitioners in the block, and that *as* the county court *had found this fact,* such order eliminated from the case every fact necessary to be passed upon by the county court. Thus showing that it was only when all elements of fact bearing upon the question of relator's right to a license have been resolved in relator's favor that a writ of mandamus could issue. In State ex inf. v. Fleming, 147 Mo. 1, it was held that the determination by the county court that a majority of the taxable inhabitants of a town had signed a petition for incorporation was a judicial and not a ministerial act. In that case the statute was mandatory on the county court "whenever" a petition signed by a majority was presented. The answer set up that the court had found that the petition was so signed. The reply admitted that the court had so found, but declared that as a matter of fact it was not so signed.

The court, on page 10, in speaking of the finding of the county court in this regard, say: "There can be no doubt that under either of these definitions the action of the county court was to all intents and purposes a judgment. It determined a compound question of both law and fact: First, as to number of inhabitants within the boundaries of the specified district; second, a question of law, whether a majority of the 'taxable inhabitants' of such district were the signers of the presented petition. Precisely this view, in effect, was taken by this court in State v. Evans, 83 Mo. 319, wherein it was ruled that the decision by a county court, on presentation of a petition for a dramshop license under a law which required the applicant for license to be a person of "good character," and that the petition was 'signed by a majority of the taxpaying citizens,' etc., that these necessary facts existed, was a judgment impregnable to collateral attack, whatever might have been the actual facts in the case. . . . It seems to me that all of the qualities and incidents which inhere in the action of the county court on presentation of a petition for dramshop license, and make that action judicial, and immune from collateral attack, equally inhere in similar action of the county court on presentation of a petition for incorporation of a city." It is true the court in that case appointed a commissioner to take evidence but it was solely on the ground that *quo warranto* was a direct attack by the State upon the proceeding under which even a judgment can be set aside. But the inference is clear in both the Fleming and Evans cases, that where the circuit court has no authority to inquire into the correctness of the county court's judgment as to whether a majority had signed the petition presented to it, certainly there is no authority for the circuit court to inquire into the county court's judgment that a two-thirds majority had *not* signed.

In State ex rel. v. Russell, 131 Mo. App. 638, it is held that a board of Aldermen in cities of the Fourth class, in passing upon the sufficiency of a petition for a dramshop license, acts judicially, and its order cannot be attacked collaterally by inquiring into the evidence upon which the sufficiency of the petition was determined. In that case the contention was that the board had found erroneously there were sufficient signers to the petition (which is the converse of the proposition urged by relator here). The court, however, speaking through Judge GOODE, say: "To uphold this contention without an averment of fraud in the conduct of the board, we must be prepared to say the truth of a judicial finding may be called in question collaterally; and this, of course, we will decline to say. If judicial proceedings could be thus collaterally challenged and annulled, every order of a county court or city council for license, and every finding of fact on which the order was based, could be reopened and the facts lying back of the record again examined. The law does not accept such a doctrine; but having lodged the power to find the facts in a body or tribunal which acts judicially, assumes its findings are true. [State v. Evans, 83 Mo. 319, 322; State v. Cauthorn, 40 Mo. App. 74, 99; State v. County Court, 45 Mo. App. 394; Cooper v. Hunt, 103 Mo. App. 9, 77 S. W. 403, and cases cited.] Respondent's refusal would stand on a very different footing if fraud was shown on the part of the board, especially in an equity suit. It might well be that such a finding, like any other judgment induced by fraud practiced in procuring it, would be vacated. This was held in a recent case where it was shown a county court fraudulently found the requisite number of petitioners had asked the granting of a dramshop license, and had refused to make proper entries of record so as to enable the remonstrators to contest the matter by *certiorari*. [Burkharth v. Stephens, 117

Mo. App. 425, 94 S. W. 720.]  . . .    To permit an inquiry into the evidence used by the board with a view to annulling its findings, if the evidence was incompetent, would be but a roundabout way of allowing a collateral attack on the action of a tribunal in a proceeding which it was empowered to adjudicate.''

In Kochitzky v. Herbst, 160 Mo. App. 443, it was held that the county court acts judicially in determining whether a petition for a dramshop is properly signed, and its judgment is conclusive except in a direct proceeding to set it aside for intentional wrong or fraud.

In order that it may clearly appear that the county court did not arbitrarily record as a mere conclusion a finding that relator's petition was not signed by a two-thirds majority, but that it reached such conclusion carefully and as relator states ''after listening to all the evidence'' the order made by the county court, as pleaded by relator in his petition for the writ and as set forth in the alternative writ, is here set forth:

''The court further finds that the said application and petition contains the following named persons who are assessed tax-paying citizens of the city of Maryville, Mo., as shown by the last previous annual assessment and vote of the city, as aforesaid, and own property located in said block as aforesaid, and are therefore proper signers to the said application and petition:  C. B. Yoe, A. Lippman, C. J. Green, Joe Binter, C. W. Seiler, S. R. Lucas, Fred Smith, R. Kuchs, A. Kuchs, Theodore Blatter, W. J. Staples, and W. A. Heller.

''The court further finds that there are subscribed to the said application and petition the following named persons who are not assessed tax-paying citizens of the city of Maryville, Missouri, as shown by the last previous annual assessment and vote of the city, as aforesaid, owning property located in the block aforesaid, and are therefore not qualified signers to the said ap-

plication and petition: Dell Davison, Conrad Sweitzer, John P. Behm, Paul Kuchs, L. G. Upschulte, Charles Buhler, Chas. M. Heflin, L. S. Yoe, John Kirch, and Grant Trusty.

"The court further finds that there are the following named persons who are assessed tax-paying citizens of the city of Maryville, Missouri, as shown by the last previous annual assessment and vote as aforesaid, who own property located in the block aforesaid; and who did not sign the application and petition: John Airy, John K. Sawyers, E. Airy, Hal Hooker, George S. Miller, Ed Otis, Charles Stilwell, Geo. L. Wilfrey, S. H. Kemp, Fin Conrad, Omar Catterson, and S. G. Gillam.

"The court therefore finds that the said application and petition does not contain a two-thirds majority of all the assessed tax-paying citizens of the city of Maryville, as shown by the last previous annual assessment and vote, as aforesaid, who own property located in the block, as aforesaid.

"It is therefore ordered and adjudged by this court that the said application and petition be rejected and that a license for a dramshop as prayed for in the said application of William A. Heller, be and the same is hereby denied."

Relator then pleads that certain of the names, whom the county court found were not proper signers, were such and should have been counted; and also pleads that certain of the persons whom the county court found were qualified to sign but had not, were not in fact and truth qualified to sign, and, therefore, should not have been taken into consideration in determining whether the petition was signed by a two-thirds majority. So that clearly relator, by his petition for mandamus, is asking the court to again hear the evidence and decide the questions of law and fact which were presented to and passed upon by the county

court. In State v. Evans, 83 Mo. 319, l. c. 321, the Supreme Court said: "Exclusive jurisdiction on the subject of issuing licenses for the sale of liquor has been conferred upon the county court." And then on page 322, after quoting the statute relating to the granting of saloon licenses, said:

"It thus seems that the exclusive power of granting licenses for the sale of liquor is vested in our county courts, and that in the exercise of such power they act in obedience to their opinion and judgment, It is for them to say whether or not the applicant is a person of good character, and whether or not the preliminary petition, required by law, has been signed by a majority of the tax-paying citizens of the city and square wherein the dramshop is to be located."

As exclusive jurisdiction is in the county court, and the entire matter of determining whether a saloon license shall be granted is judicial in character, requiring the hearing of testimony *pro* and *con,* the formation of belief thereof and the reaching of a conclusion thereon, it would seem that the circuit court was right in dismissing the petition for the writ.

It has been asked, if this be the law, what remedy has a petitioner for a saloon license in a case where he did in fact and in law have a two-thirds petition, and yet the county court refused to grant him a license. To this the answer may be first, that, if the decision of the county court in passing upon a dramshop license is a *judgment,* then certainly the petitioner has no remedy by mandamus. As to what other remedy he may have it is also certain that he has the same remedies open to him to attack such judgment as are allowed against any other judgment rendered by a court having exclusive jurisdiction and from which there is no appeal or writ of error. If there be fraud, corruption, or intentional wrongdoing, or arbitrary ruling amounting in law to such, then a bill in equity could be

174 Mo. App.—31

entertained to set the judgment aside. [Kochitzky v. Herbst, 160 Mo. App. 443; Burkharth v. Stevens, 117 Mo. App. 425; Cooper v. Hunt, 103 Mo. App. 9.] It cannot, however, be annulled, overturned, set aside, or supplanted by a proceeding in mandamus, and that is the question here. The judgment of the court sustaining the demurrer and dismissing relator's petition and alternative writ is, therefore, affirmed. *Ellison, P. J.*, concurs. *Johnson, J.*, dissents.