THE STATE OF MISSOURI, on the Relation of the LAW AND CREDIT COMPANY, ELBERT E. SMITH and ERNEST E. SMITH, Plaintiffs, v. HONORABLE WILLIAM O. THOMAS, et al., Defendants.

Kansas City Court of Appeals, April 5, 1920.

1. **MANDAMUS: Letting of Contract for Publication of Official Notices: Competitive Bidding.** Where a board, composed of the circuit judges of Jackson County, permitted a publishing company to amend its bid by merely extending it after the bid of a competitor had been opened and the former had knowledge of the latter's bid, it could not be said to have abused its discretion under section 591 Revised Statutes 1909, as amended (Laws of 1913, p. 97) and mandamus to compel a re-submission of bids would not lie.

2. ———: ———: **Daily Newspaper.** Under the above statute requiring the letting of the contract to a daily newspaper the board does not abuse its discretion in letting the contract to a newspaper that became a daily one at the time the notices were to be published, although not a daily newspaper at the time the contract was let.

ORIGINAL PROCEEDING FOR MANDAMUS.
MOTION FOR JUDGMENT ON PLEADINGS OVERRULED.

*A. N. Gossett* and *Flournoy & Flournoy* for plaintiffs.

*Casey & Wright* and *Jas. P. Aylward* for defendants.

BLAND, J.—This is an original proceeding in mandamus instituted in this court on February 14, 1920. The alternative writ was issued to which respondent made return. To the latter pleading relators filed their answer to which respondents replied. Thereupon relators filed a motion for judgment on the pleadings, which is now before us for determination.

The relator, Law and Credit Company, is a corporation operating a daily newspaper in Kansas City, Jackson County, Missouri, styled "The Daily Record." The relators, Elbert E. and Ernest E. Smith are residents and tax payers on said city. The respondents are the ten circuit judges composing the circuit court of Jackson County, Missouri, sitting in their capacity as a board for the publication of advertisements, judicial notices and orders of publication required by law to be made in said city. [Sec. 591, R. S. 1909, as amended (Laws of 1913, p. 97).] This statute reads as follows:

". . . In all cities having a population of more than one hundred thousand inhabitants, a board consisting of the judges of the circuit court of such cities, or of the judicial circuit in which such city is situated, or a majority of the same, shall, on or before the first day of January, 1914, and every two years thereafter, cause to be published in some daily newspaper of said city a notice of at least twenty days, designating when and where said board will receive sealed proposals from daily newspapers published in said city for the publication of all advertisements, judicial notices and orders of publication required by law to be made At the time and place so designated, said board, or a majority thereof, shall proceed publicly to open said bids, and shall award the printing of all said publications to the newspaper naming the lowest and best bid; *Provided, however,* first, that said bid shall be accompanied by a good and sufficient bond, in a sum to be fixed by said board, conditioned for the correct and faithful publication in said newspaper of all said advertisements, notices and orders, in manner and form as required by law, and accordng to the schedule of rates named n said proposal, and upon said bond suit may be instituted in the name of the State, to the use of any person aggrieved; second, that in cities having a population of more than six hundred thousand inhabitants, as shown by the last United States census, no paper shall be awarded the contract for said publication unless it have a bona-fide

daily circulation in number of copies equal to at least five per cent of the total population of such cities as shown by the last United States census; third, that in case said board shall believe that said bids are not sufficiently definite or specific, or that in consequence of combinations, or from any cause, said bids are unreasonably high, it shall be at liberty to reject all proposals, in which case it shall proceed at once to readvertise for proposals, as hereinbefore provided."

We gather from the admitted facts in the pleadings that pursuant to the directions of the statute said judges constituting said board advertised, on January 2, 1920, for sealed bids for the publication of advertisements, judicial notices and orders of publication required by law to be made in said city. Bids were submitted but were rejected. Whereupon another notice was published calling for bids to be submitted on February 2, 1920, at which time bids were submitted by the relator, Law and Credit Company (which had been doing the work for the two previous years) and the Out West Publishing Company. The Law and Credit Company presented bids in two forms, one at 60 cents per 100 words for each insertion for notices published daily and $1.70 for each insertion for notices published weekly, and a flat rate of $7.50 for the publication of each notice of letters of administration granted by the probate court and of $4.50 for each notice of final settlement in said court. The Out West Publishing Company submitted a bid of 53 cents per 100 words for each daily insertion and of $2 per 100 words for each weekly insertion.

On opening the bids the board advised the Out West Publishing Company that "The Daily Record" had made a flat rate for the publication of probate court notices and stated that the former might have the privilege of meeting said rate, whereupon the Out West Publishing Company made a flat rate which was based upon its bid of 53 cents per 100 words for a daily insertion. The board offered to permit the Law and Credit

Company to meet the flat rate bid of the Out West Publishing Company but the former refused to amend its bid. The flat rate offered by the Out West Publishing Company was as follows:

"We add to our tender and offer to publish notices of final settlement at $4.06; also grant of letters at $4.97. This makes a total of $9.03.

Our general tender is at 53 cents per 100 words. This addition is arrived at by charging this same 53 cents per 100 words for the 50 words in the short notice, multiplied four insertions and charging 75 cents for each make-up. On the long notice there are 93 words, four times, with four make-ups, figuring up $4.97."

Respondents' allegation concerning the same is as follows:—

"Respondents further represent that said flat-rate bid in no way changed the bid made by the Out West Publishing Company of February 2, 1920, as the flat-rate bid was identical with the bid at 53 cents per 100 words, the bid accepted by the Board. That there was, in fact, no change in the bid of the Out West Publishing Company, a real bona-fide newspaper and competitive in every respect."

On February 7, 1920, the board let the contract for such publications to the Out West Publishing Company. At that time and prior thereto the Out West Publishing Company was a weekly newspaper and not a daily one, but it became a daily newspaper on Monday, February 9, 1920, and was such as soon after the letting of the contract as the notices covered by said contract could be published, the contract being let on Saturday and the Out West Publishing Company having become a daily newspaper on Monday, the next business day. Ever since that time it has been publishing such notices.

The relators contend that the contract for publishing notices was not legally let for the reason that there was no competitive bidding and that the Out West Publishing Company, to which the contract was let, was

not a daily newspaper either at the time of the advertising for bids or at the time of the letting of the contract, and relators pray the court for a peremptory writ of mandamus requiring said board to advertise and publish notice, as is required by law, for submission of bids.

There is some question as to whether it is admitted in the pleadings that the proposal for bids called for a bid at a flat-rate as well as at so much per 100 words. For the purpose of this case we assume, as relators do, that the publication of the notice for bids contained this provision.

In respect to the contention that there was no competitive bidding for the reason that the board permitted the Out West Publishing Company to amend its bid after the bid of the Law and Credit Company had been opened and the former had knowledge of the contents of the latter's bid, without again republishing the notice for bids and allowing all bidders to submit sealed bids thereunder, the statute, supra, under which the board was acting, does not provide in what manner the bids shall be submitted; whether they should be for publishing the notices at so much per 100 words or at a flat rate or both. According to the return of the respondents the flat rate that the Out West Publishing Company submitted was not a change of the terms of its original bid but merely an extension of the same.

Mandamus does not lie to enforce the performance of a duty that requires the exercise of official discretion or judgment. [State ex rel. v. Thornhill, 174 Mo. App. 469, 472, 473.] There is no law or rule of public policy to be subserved by the substitution of the discretion of this court for that of the circuit judges of Jackson County constituting said board, who are presumed to be learned in the law and for that reason of good and sound judgment. The writ of mandamus will not issue to regulate or control the discretion reposed by law in an official while acting. The thing the writ is for is to coerce the performance of a ministerial duty

*imposed by law.* [State ex rel. v. Hudson, 226 Mo. 239, 265.] The bid of the Out West Publishing Company was not substantially changed and the matter permitting it to extend its bid in the way that it did was one within the discretion of the board and not subject to review by us by mandamus. The statute says that the board "shall be at *liberty* to reject all proposals" if "said bids are not sufficiently definite or specific." The statute plainly leaves the matter of rejecting or accepting such bids to the discretion of the board.

The question as to whether the contract was properly let to a newspaper that was not a daily newspaper either at the time of the submission of the bids or at the time of the letting of the contract, is one that requires serious consideration. While the statute provides that the board shall publish a notice designating when and where said board will "receive sealed proposals from daily newspapers published in said city for the publication of all advertisements," etc. and "shall award the printing of all said publications to the newspaper naming the lowest and best bid," its terms are not definite and explicit as to whether the newspapers shall be a daily at the time it submits its bids or at the time of the publication of the advertisements, etc. In this situation it is proper to ascertain the intention of the Legislature which framed the statute. [Sedgwick on Construction of Statutory and Constitutional Law (2 Ed.), p. 194; State ex rel. v. Little River District, 271 Mo. 429, 436,] where it is said, "It is elementary that statutes should be so reasonably construed as to give them their intended force and effect;" Gum v. St. L. & S. F. Ry. Co., 198 S. W., 494, 496, where it is said, "In the interpretation of an amended statute, the state of the old law and mischiefs arising thereunder are to be considered.]

The statute as it was originally enacted provided that no paper should be awarded a contract unless it should have a bona-fide daily circulation equal to at least five per cent of the total population of the city where-

in the notices were to be published. The amendment (Laws of 1913, p. 97) changed this provision of the statute as to publications in Kansas City so that no minimum circulation was provided. Evidently it was the intention of the Legislature to make it possible to legally publish notices in newspapers of small daily circulation so as to save persons who are required to make such publications the expense of publishing in a large city daily. It was evidently the intention of the Legislature that the board might in its discretion award the contract to a newspaper of the lowest circulation so long as it was a daily newspaper. The Legislature was not interested in the character of the daily newspaper in which the notices should be published to the extent of depriving the board of its discretion in such matters. The purpose of the Legislature was to secure the publishing of such notices in some daily newspaper at the best rate obtainable in view of its character as a medium for giving notice to persons interested. Whether that newspaper should be a daily newspaper at the time the bids are submitted and when the contract is let was not material. The material consideration was whether the newspaper is a daily newspaper at the time the notices are to be inserted. It, manifestly, would not be material whether the paper was a newspaper before the work was actually to be done by it for the reason that it might be a daily newspaper at the time the bids were submitted or the contract let and might not be one during the time the insertions were to be made in it. We do not think that the Legislature was concerned with the question as to whether the newspaper should be a daily newspaper at any time other than when the work of publishing the notices was to be performed. For these reasons we think that there was a valid letting of the contract, or, at least, that the board did not abuse its discretion in letting the contract to a newspaper such as the successful bidder in this case. The board no doubt satisfied itself that the Out West Publishing Company would become and con-

tinue a daily newspaper in time to do the work let to it and that it would be a good medium for the publication of the notices, cost and all other things considered. This would be an exercise of the discretion vested in the board by the Legislature.  It is quite apparent in construing this statute that the Legislature meant to leave the whole matter of the best medium of giving notices, cost, etc., to the discretion of the board, subject to the sole limitation that the notices mentioned in the statute must be published in a daily newspaper.  To be entitled to the writ of mandamus the relators must show a clear, plain and unquestionable right' to the ·writ.  [Adair Drainage Dist. v. Q. O. & K. C. R. Co., 217 S. W. 70, 74, and cases cited.]  Relators have not shown such a right in this case.

Something is said in relators' brief in regard to the advertisement for bids specifically designating what kind of type, etc., should be used in printing the notices, and that while the Law and Credit Company provided in its bid for the kind of type for the proposed advertising the Out West Publishing Company failed to do so.  In reference to this we do not find any point properly raised by the pleadings.

From what we have said the motion for judgment should be overruled, and it is so ordered.  All concur.